ROBERT STRAMLER V. ELIZABETH COE, ADM'RX.

A sufficient answer to the assigned error, in admitting the testimony of Hensley
and Clemons, is, that the evidence was received without objection, and conse-
quently could not now be the subject of exception.   But there was in fact no
error in admitting the evidence ; for where no consideration is expressed in a
deed, the true one may be proved.

Where the plaintiff in an action of trespass to try title, offered in evidence a certi-
fied copy of a bond for title, dated September 17th, 1835, witnessed by three sub-
scribing witnesses, one of whom made his mark, and it appeared from the certi-
ficate of authentication for record, which was dated 28th of September, 1845,
that the witness who had made his mark, made oath that day before the officer,
that " to the best of his knowledge and belief, he signed the same as a witness,
" and that James Price (the obligor) acknowledged that he signed it for the
" purposes therein expressed ;" on objection by the defendant, that the bond
was not sufficiently authenticated to entitle it to be recorded, it was held suffi-
cient, especially under the Act of February 5th, 1841.   (Hart. Dig. p. 839.)

It seems that excessive or capricious donations and sales, made by the husband,
with the intent to defraud the wife, would be void ; and she would be entitled
to her action against the property of her husband and against third persons.

Where the husband, for a consideration received at the time, gave a bond for title
to a part of his headright league, in 1835, and his wife died in 1851, (no admin-
istration appearing to have been taken out on her estate) and the husband in
1853 made a conveyance in pursuance of the bond, this Court said the circum-
stances were not such, at the death of the wife, as would have defeated a prayer
for specific performance, but, whether they were or not, they were certainly not
such as would deprive the head of the community, who had made the contract,
from the right of carrying it into execution, by his voluntary act; and held ac-
cordingly.

Where the husband gave a bond for title to community property, in which the
consideration was not expressed, and, after the death of the wife, made a convey-

ance of the same land to the executrix of the obligee in the bond, and the con-
veyance made no allusion to the bond for title, but recited the receipt of a cer-
tain sum of money as the consideration thereof, it was held that the presump-
tion was that the conveyance was made in discharge of the bond.

Appeal from Washington.  Action of trespass to try title,
by Elizabeth Coe, executrix of P. H. Coe, against Reuben
Stramler.

The plaintiff gave in evidence a certified copy of a bond for
title from James Price to P. H. Coe, dated September 17th,
1835, for the land in controversy.  The bond did not recite
any consideration ; was witnessed by three witnesses ; was
proved for record on the 28th of September, 1845, by one of
the subscribing witnesses, who had made his mark, the certifi-
cate being that the witness "made oath to the best of his
"knowledge and belief he signed the same as a witness, and
"that James Price acknowledged that he signed it for the pur-
"poses therein expressed."  To the introduction of said bond
the defendant excepted, as stated in the Opinion.  She then
gave in evidence a deed from James Price, to herself, as exec-
utrix of P. H. Coe, dated May 6th, 1853, purporting to be in
consideration of $2500, for the land in controversy.  She also
proved by two witnesses, Hensley and Clemons, that the con-
sideration of the bond from Price to Coe was a tract of land,
which had been conveyed by Coe at Price's request, to a per-
son to whom the latter had sold it.  It was admitted that
Price had received a valid grant from the Government for a
league of land, including the land in controversy.

Defendant gave in evidence a conveyance from certain per-
sons who were admitted to be the heirs of Mrs. Price, wife of
James Price, dated September 29th, 1853.  He proved that
Price and his wife moved on the land in controversy in 1847,
1848 or 1849, and that they resided there until 1851, when
Mrs. Price died ; she claimed the land as her homestead ; the
heirs went on the land in January, 1851.

It was apparent from all the testimony, although not defi-

nitely stated, that the league of land was the headright of
James Price, received by him as the head of a family, which
consisted of himself, his wife, (the mother of the defendant's
vendors,) and their children then living.

The instructions were favorable to the defendant.    Verdict
and judgment for the plaintiff for all the land.    Motion for
new trial overruled.


*J. E. Shepard*, for appellant.

*Lewis & Barber*, for appellee.


HEMPHILL, CH. J.    A sufficient answer to the assigned er-
ror, in admitting the testimony of Hensley and Clemons, is,
that the evidence was received without objection, and conse-
quently could not now be the subject of exception.    But there
was in fact no error in admitting the evidence ; for, where no
consideration is expressed in a deed, the true one may be
proved.  (Cowen & Hill's Notes, Part 2nd, n. 289, referring
to 1 Penn. R. 486 ; 15 Mass. R. 85, &c.)

The second assignment is, that the Court erred in permit-
ting the bond from James Price to P. H. Coe to be read in
evidence.    On the trial, a copy of this bond was offered and
received, and the objections to its admission, as expressed in
a bill of exceptions, were, 1st. That it was not properly au-
thenticated, to entitle it to be recorded.    2nd. That no con-
nection was shown to exist between the deed of James Price
to Mrs. E. Coe and the bond.

The first question is whether the bond was sufficiently
proved to admit it to record.    The bond was recorded in
1845, when the provisions on the subject of registry, to be
found in the Act of Limitations of 1841, were in force ; and
by these, any deed, instrument, &c., was entitled to registra-
tion, when proved by a subscribing witness, without specifica-
tion of the fact which the subscribing witness should prove, or

whether the evidence of the witness should be positive, or, as in this case, to the best of his knowledge and belief. More than ten years had elapsed from the execution of the bond, and greater certainty in the proof could not reasonably have been required. Had the original bond been offered at the trial, and the witness Gwinn had testified that to the best of his knowledge and belief he had signed as a witness, and that James Price, the obligor, had acknowledged his signature for the purposes therein expressed, the proof of execution would have been deemed sufficient; and it is believed that on such proof, the bond was sufficiently authenticated for record, and especially under the Statute then in force on the subject of registration; consequently there was no error in not rejecting the copy, on the alleged ground of there being no proper record of the original.

The second ground of exception to the admission of the instrument, viz.: that there was no connection shown to exist between the bond to P. H. Coe and the deed to Mrs. E. Coe, covers a will filed in the agreement of appellant, involving the principal merits of the controversy, and we will therefore proceed to examine the principal questions in the cause, without further reference to the errors as assigned, or to the order in which they have been discussed by counsel.

This is one of those causes, now becoming too frequent, in which the heirs of a deceased wife are attempting to claim the one-half of the community property, and to subvert the acts and alienations of their father, done by him during the existence of the community, and also after its dissolution by the death of his wife. Controversies of this character are painful in their nature, and the presumption must always be against the child who disavows the acts of the author of his life, and virtually or expressly charges him with fraud and wrong, in squandering and alienating property not his own, but that of his children. "Honor thy father and mother" is a command, not only of the Decalogue, but of nature; and suits in which

rights can be claimed only through the alleged turpitude of a parent, are not to be encouraged. These remarks have no special application to the parties in this cause, in fact, not so much as in others, for, from the evidence, it appears that the transaction was never satisfactory to the wife, and there is the more excuse for the attempt at repudiation, on the part of the children; and this brings us to the main question, that is, whether the bond, although unsatisfactory to the wife, was binding on her and on her heirs claiming a share of the community in her right.

This bond was proved to be for valuable consideration, and as such it was as much binding on the wife as on the husband, unless it had been shown that it was made with the intention to defraud the wife of her rights in the community. The husband has the active control and administration of the ganancial property during the matrimony. No consent of the wife is necessary to a valid alienation of such property by the husband. But excessive or capricious donations and sales, made with the intent to defraud the wife, would be void; and she would be entitled to her action against the property of the husband and against third possessors. (L. 5, Tit. 4. lib. 10, Nov. Recop; Escriche, BIENES GANANCIALES; see also Commentaries of Llamos on the 46th law of Toro, from the 54th to the 152nd paragraph.) The bond, then, being valid as against the wife during her life, was an encumbrance on the property of the community, and as such it descended to her heirs. They are entitled to the share of their mother in the common property, but this consists only of half of the residue which may remain after the discharge of all the just debts and liabilities of the community.

The appellant contends that this bond was not a just liability at the death of the wife, on the ground that it was barred by the Statute of Limitations. But this defence cannot avail the appellants, or restore to them the right in the land which was agreed to be conveyed. The bond is, in effect, but an

agreement for the sale of the land, and the consideration having been paid at the inception of the contract, the full equitable title vested in P. H. Coe, the vendee. This title was superior to the legal title remaining in the vendor, James H. Price. It was sufficient to have entitled the vendee to a decree for specific performance, and, as against the legal title, would, in an action of trespass, have constituted a valid defence, or, where the equity jurisdiction is separate, would have been good ground to enjoin the action to try the title. The vendor, Price, and all who claim through him, and through his wife by virtue of her right in the community, of which community the said Price was the head at the execution of the contract, held the legal title in trust for the benefit of the vendee. This trust may be disavowed or repudiated, or, after a sufficient lapse of time, Courts may refuse a decree for specific execution. There was evidence of a commencement of adverse possession, but not for a length of time which would operate as a bar, and, least of all, as a bar of a character so potent as to afford legal ground of complaint, to the heirs of the wife, against a recognition of the contract by the husband, the surviving partner of the community, who made the agreement when he had full dominion over the property. Nor can it constitute any ground upon which the acts of the surviving partner, in completion of the agreement, can be defeated. Neither party went into actual possession until many years after the contract, and the possession which was taken by Mrs. Price in 1847, was not of long continuance. The circumstances were not such, it is believed, as would, at the death of Mrs. Price, have defeated a prayer for specific performance; but whether they were or not, they were certainly not such as would deprive the head of the community, who had made the contract, from the right of carrying it into execution, by his voluntary act.

We will now examine the effect of the deed executed by James H. Price in 1853. And we are of opinion that this

conveyed not only his right in the  community, but also that of the wife, and consequently that of her children, who were the vendors of the appellant.   There was no proof  that the deed was made in pursuance of the  bond, but such is the presumption.   They are for the same  land, and deeds in pursuance of bonds for title are  frequently made without reference to such bonds.   There is no proof to the contrary, nor any fact except that the consideration of the deed is expressed to be for twenty-five hundred dollars ; but this  is not sufficient  to rebut the presumption of connection between the instruments.   The real consideration is often quite variant from  that expressed in the deed.   The  conveyance of Price, after the  death of  his wife, being but the completion of  a pre-existing arrangement, made during  the  existence  of  the matrimony, must be held as valid as if made in the life time of  the wife.   As surviving partner, he had  authority to perfect a transaction commenced during the partnership, and  this  rule is of special force and application in cases of  conjugal partnership, in which there  is a head that  has the entire control of  the affairs of  the partnership, with no restraint except that it shall not be abused with fraudulent intent against the rights of the other  partner.

Such being the rights of the husband, as head of the community and as surviving partner, the heirs  of the wife  cannot repudiate his acts and contracts, begun before  but finished after the death of their mother.   They receive their mother's interest, but encumbered with burdens which have  the same binding  force and effect upon them, as they have upon the husband and surviving partner.   And if the husband, neither before  nor after  the death of his wife, could  have brought suit and  recovered  as against  his own  bond, this land from the obligee or from his estate, so neither  could his children, claiming  in right of their mother, sustain such suit, nor  can they set up their rights in defence in a suit to try title.

The view we have taken of the rights and  powers  of the surviving  husband  accords with  the principles and doctrines

held in a case involving some of the same questions, decided by the Supreme Court of Louisiana, in which the subject was maturely considered and fully and ably discussed. (Caldwell v. Heunen, 5 Robinson, 20 ; see also Guidry v. Collins, 6 Annual La. R. 90.) Any other rule would be productive of the worst results, and would greatly increase the amount of litigation necessarily growing out of rights in community property.

We are not to be understood as holding that where the community is dissolved, the surviving partner may control the property as he pleases, even with respect to previous contracts. It is his duty, for instance, to discharge the debts with all convenient speed, so that the estate be not consumed with interest, and just defences against the liabilities of the community must be set up by him, otherwise he might be held responsible to the heirs of the deceased ; and when sued to enforce an executory contract of sale, the heirs of the deceased partner may be joined in order that no cloud should rest on the title to be decreed. But where he voluntarily conveys community lands which, during marriage, he had by a valid contract agreed to sell, his act cannot be gainsaid by the heirs of the wife, nor can they pretend to any rights in conflict with those enuring to the vendee.

Upon the whole, we are of opinion that there was no error in the judgment, and that it be affirmed.

Judgment affirmed.