DAVIS v. DAVIS. (No. 1606.)*

(Court of Civil Appeals of Texas. Texarkana. May 4, 1916. Rehearing Denied May 25, 1916.)

1. HUSBAND AND WIFE ⟨key⟩265—COMMUNITY PROPERTY—INTEREST OF WIFE.

A married woman has as much interest in the community property as her husband, and has an equal right to its beneficial use.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 917–924; Dec. Dig. ⟨key⟩265.]

**2. HUSBAND AND WIFE ⬤⇒209(6)—COMMUNITY PROPERTY—HUSBAND'S RIGHT OF ACTION.**

A husband's right to sue alone for the recovery of community property is incidental to his statutory right to the exclusive management thereof based on the assumption that he will discharge his obligations as the head of the family, and not on any legal disability of the wife, so that when the husband leaves his wife, the reason for his control over community property ceases, and an action by the wife alone for damages for slander was not so fundamentally defective that her petition would be disregarded and her suit treated as a nullity.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 771; Dec. Dig. ⬤⇒209(6).]

**3. HUSBAND AND WIFE ⬤⇒230—CAPACITY TO SUE—OBJECTION—WAIVER.**

Where the defendant, in an action by an abandoned wife to recover damages for slander, made no effort to abate the suit upon the ground of her coverture, he could not, after judgment on the merits, first raise that objection; that being a defense which he might waive.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 804, 835, 840, 842; Dec. Dig. ⬤⇒230.]

**4. HUSBAND AND WIFE ⬤⇒209(6)—COMMUNITY PROPERTY—ACTION BY WIFE—DAMAGES FOR SLANDER.**

In a suit by a wife who had been abandoned by her husband, to recover damages for slander, where it was not alleged that she was separated from her husband, and that he had refused to join her in the suit, or that she was in need of the community funds for which the suit was brought, but it appeared that she had been abandoned without cause, driven from her husband's home, and compelled to seek shelter at her father's house, it was not essential to her right to sue alone that the husband should have expressly refused to bring a suit, as the jury might conclude that if she had not brought it, it would not have been brought, and that any damages recoverable would have been lost, and that she was dependent on her own resources or the generosity of her parents for support.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 771; Dec. Dig. ⬤⇒209(6).]

**5. HUSBAND AND WIFE ⬤⇒260—CHOSE IN ACTION—USE OF PROCEEDS—SUPPORT.**

In such case, and although it did not appear that the husband had participated with his father in the slander for which his abandonment of his wife was indirectly responsible, the right to recover damages for the slander constituted a chose in action, and, whether community property or not, was such property as the wife might resort to for the support of herself and child.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 912; Dec. Dig. ⬤⇒260.]

**6. HUSBAND AND WIFE ⬤⇒270(1)—ABANDONMENT OF WIFE—COMMUNITY PROPERTY SUIT.**

In such case, it was not necessary that the wife should be in actual want before she could sue for community property alone, and she might be empowered to sue alone to prevent the loss of her community interest by collusion between her husband and defendant, his father, though no fraud or collusion was alleged.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 968–971, 973; Dec. Dig. ⬤⇒270(1).]

**7. LIBEL AND SLANDER ⬤⇒7(16)—ACTIONABLE WORDS—IMPUTATION OF UNCHASTITY.**

The statement by the father of plaintiff's husband, made to her father, that she was four months advanced in pregnancy when she had been married only about seven weeks was slan-

derous per se, without any innuendo to show the defamatory character of the statement.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 71, 73, 74; Dec. Dig. ⬤⇒7(16).]

**8. LIBEL AND SLANDER ⬤⇒100(2)—DAMAGES—SPECIAL DAMAGES.**

In an action for damages for words slanderous per se, it is not necessary to prove special damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 248; Dec. Dig. ⬤⇒100(2).]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by Jessie Davis against Adam Davis. Judgment for plaintiff, and defendant appeals. Affirmed.

V. L. Shurtleff and Wear & Frazier, all of Hillsboro, and C. L. Black, of Austin, for appellant. Walter Collins and B. Y. Cummings, both of Hillsboro, for appellee.

HODGES, J. On February 18, 1914, the appellee filed this suit against the appellant, seeking damages for certain slanderous statements made by him concerning her. The offensive language was used by the appellant in talking to the father of the appellee, was, in substance, that she was four months advanced in pregnancy at a time when she had been married only about seven weeks. The date of her marriage and other facts essential to show that the statements were designed to impute a want of chastity to the appellee were properly pleaded. It was also alleged that the appellee was a married woman at the time this suit was filed, but that her husband was the son of the appellant, was living separate and apart from her, "and will not join her in this suit, and has failed to bring any suit against the defendant in this behalf." She asked for damages, both actual and exemplary. The appellant answered denying all the material averments of the plaintiff. In reply to that portion of the petition which alleged coverture and the failure of the husband to join in the suit, he merely denied "that the plaintiff's husband had refused to join her in bringing the suit against this defendant." The material facts are, in substance, as follows: The appellee's maiden name was Jessie Landrum. On January 4, 1913, when she was about 18 years of age, she was married to Ben Davis, then about 20 years old, the son of the appellant. The couple lived together at the residence of the groom's parents until some time during the following February, when they separated and have since lived apart. A day or two after the separation a conversation took place between the appellant and W. H. Landrum, the father of the appellee. Each gives a different version as to what was there said. The appellant testified:

"When I spoke to Mr. Landrum about it I was in my wagon in Johnson county. I spoke about the matter first. Told him I had bad news to

tell him. I had something to tell him that was bad, and I hated to tell him. I had three wagons carrying over a load of cotton, and I was driving the front team, and my boy (appellee's husband) the second team; and Mr. Landrum and his wife and the plaintiff were in the third wagon, behind me and my boy. I stopped and told my boy to tell Mr. Landrum that I wanted to talk to him some, and he got in the wagon with me. * * * I told him that I had got a note, or a letter, from my wife, and she said she had told the boy that the girl was in a family way, and that the boy said it was not his'n and that he had quit her; and Mr. Landrum said: 'It is a damn lie; it is his;' and I said, 'I don't know, Mr. Landrum, whose it is, but she looks like a woman that is three or four months gone.' That conversation took place on the day that the boy quit her, about the 25th of February. * * * At the time that I had the conversation with Landrum, there on the road when I stopped, and him and me talked in the wagon, that was not in response to any question that Landrum had asked me. * * * I stopped and started the conversation off with the statement that I had some bad news to tell him."

Landrum testified:

"The first conversation I had with Mr. Davis about this matter was on the road from Cleburne. We had come out from Cleburne about a couple of miles, I reckon, and Mr. Davis motioned to me to get out of my wagon and come get in the wagon with him; and he says to me, he says, 'Landrum, I have got something to tell you.' Say I, 'Out loose,' says I, 'what is it?' He says: 'My son and your daughter has separated.' Says I, 'What is the matter?' 'Why,' he says, 'your daughter is four months gone;' that is what he replied to me. * * * Shortly after my daughter and her husband had separated I had occasion to see Adam Davis, the defendant, at his home. I went to see him and proposed to him to, 'Let's get those children back together. This is all foolishness;' and he says, 'No, never; your daughter is four months gone, and my son never shall live with her no more.' I says, 'Mr. Davis, you are mistaken;' and he says he was not. I talked on, and I says: 'Mr. Davis, I can ruin you with the law, the way you have talked with me about my girl;' and he says, 'You cannot do it, I have seen my lawyers, and if you want to do anything you crack your whip; I am ready.' I think that was somewhere about the second or third day after the separation, the best I can remember."

The appellant further testified, in substance, that when he said the appellee was "four months gone" he meant that she was four months advanced in pregnancy at that time. There appears to be no controversy that all parties so understood the language he employed, and that it imputed to the appellee unchaste conduct prior to her marriage with Ben Davis. In response to special interrogatories propounded the jury found that the defamatory statements charged imputed to the appellee a want of chastity, that they were false, and that the appellant knew at the time that they were untrue, and uttered them maliciously. Upon these and other answers the court entered a judgment in favor of the appellee for the sum of $2,500 as actual damages.

The first group of assigned errors attacks the right of the appellee to prosecute this suit alone. It is urged that the damages sued for constitute community property, and that neither the pleadings nor the evidence presents a case which a married woman may prosecute without the joinder of her husband. It is contended that the wife in bringing a suit of this character must allege and prove, not only that she is separated from her husband, and that he refuses to join her in the suit, but that he has failed to support her, and that she is in need of the community funds for which the suit is brought.

[1-3] A married woman has as much interest in the community property as her husband, and has an equal right to its beneficial use. The right of the husband to sue alone for its recovery is incidental to his right to manage and control that class of property, and not upon any legal disability of the wife by reason of her coverture. The statutory right of the husband to exclusively manage and control the community property is based upon the assumption that he will discharge his obligations as the head of the family; that he will live with and support his wife and children, or be ready and willing to do so. Wright v. Hays, 10 Tex. 131, 60 Am. Dec. 200; Dority v. Dority, 96 Tex. 215, 71 S. W. 950, 60 L. R. A. 941, and cases there cited. When he abandons his duty, repudiates his connubial and parental obligations, and compels his wife to rely upon her own efforts, there is neither reason nor justice in continuing his statutory authority over the common property. Hence, an action by an abandoned wife alone is not so fundamentally defective that her petition will be disregarded and her suit treated as a nullity.

The appellant relies upon the case of Ezell v. Dodson, 60 Tex. 331. That suit was brought by a married woman alone to recover damages for an assault and battery. Her husband was not a party to the action. As an excuse for not joining him as a party plaintiff, she alleged that they were living separate and apart from each other, and that he refused to join her in the prosecution of the suit. The trial court sustained special exceptions to the petition, and dismissed the case, for the reason that it did not allege sufficient grounds to justify a suit by the wife alone. Chief Justice Willie discussed at some length the proposition involved, and in affirming the judgment said:

"The petition in this case does not give us the circumstances of the separation, or the length of its continuance. It might have been of very recent occurrence, and we cannot presume as to the causes which produce it, or charge one party with fault rather than the other. It is only stated that the parties are living separate, and that the husband refuses to join in the suit. The mere fact that husband and wife are not living together does not authorize the wife to sue alone in any case where she could not thus sue if they were not separated. The refusal of a husband to become a party to an ordinary suit to recover community property would not give the wife the power to sue alone, when they were living together, and he was exercising rightful control over the common estate. She could not, contrary to his wishes, assume control over such estate and bring a suit for its recovery; and his refusal to join in such an action would be sufficient to defeat it. An ordi-

nary separation, and much less one caused by her own unprovoked abandonment, would not give her more rights in this respect than she would possess if living amicably with her husband. * * * Cases might, perhaps, arise where the wife could, under their peculiar circumstances, sue alone for a trespass to her person, whether she lived with her husband or apart from him. A less aggravated case of abandonment on his part might be sufficient, in some instances, to give her this right, or if he was accessory to the outrage, or in other cases which might be mentioned, the wife would doubtless be allowed to maintain the action alone. It will be sufficient to decide the law of such cases when they arise."

It will be observed that in the above case a special exception had been interposed questioning the sufficiency of the petition, and it was in sustaining that exception that the court used the language quoted. Here there was neither exception nor plea in abatement. When the defendant in a proceeding of this character makes no effort to abate the suit upon the ground of coverture, he cannot, after judgment on the merits, for the first time raise that objection. That is a matter of defense which he may waive. M., K. & T. Ry. Co. of Texas v. Allen, 53 Tex. Civ. App. 433, 115 S. W. 1179; City of San Antonio v. Wildenstein, 49 Tex. Civ. App. 514, 109 S. W. 231; Hamlett v. Coates, 182 S. W. 1147; 21 Cyc. p. 1517, and cases there cited.

[4] There is nothing in the plaintiff's petition in this case which affirmatively disclosed a situation where a wife may not sue alone for the recovery of community property. The most that can be said is that the petition fails to state all the facts which in law will ordinarily entitle her, as a matter of right, to maintain such a suit. We may therefore look to the facts in determining her authority to sue alone. When these are considered we have a much stronger case in her favor. They show that she was abandoned by her husband without a cause, at a time of life when his loyalty and fidelity were most needed. While still a mere child, and with approaching maternity, she was driven from his home, denied his lawful protection, and compelled to seek shelter under the parental roof. Her husband remained with his father, the appellant, and appears to have acquiesced in, if he did not actually approve, the slanderous charges made. It was not essential to her right to sue alone that the husband should have expressly refused to bring this suit. The jury had a right to conclude that if the appellee had not instituted the suit, it would not have been prosecuted and such damages as were recoverable would have been lost. They also had a right to infer from the surrounding circumstances that the wife had been left to her own resources or to the generosity of her parents for the support of herself and child. While the husband may manage and dispose of the common property, he will not be allowed to collude with another, and thus defeat the just demands of the wife, especially when he has forsaken her and refused to discharge his legal duties as a husband.

[5] So far we have treated the damages recovered as belonging to the common estate, but it is by no means certain that under the peculiar facts of this case they should be so regarded. In the case of Nickerson v. Nickerson, 65 Tex. 281, the wife brought a suit for a tort committed upon her person by her husband and a third party. The Supreme Court held that the damages resulting constituted her separate property, and that she had a right to bring suit alone either before or after a divorce. The reason for so treating the damages awarded in that suit was based upon the fact that the husband was a joint wrongdoer and could not maintain a suit for their recovery. While the facts in this case do not show clearly that the husband participated in the slander against his wife, yet, all of the circumstances surrounding the parties at the time indicate that he was indirectly responsible for the defamation from which she suffered. It is evident that he had already repudiated his wife and sympathized with his father in what the latter said in justification of the desertion. In Wright v. Hays, referred to above, Chief Justice Hemphill said:

"The broad principle is asserted, in the case from Sergeant and Rawle, that the desertion of the husband, and the cessation of his wonted duties, vest a separate property in the wife, in the acquisitions made during his desertion."

The right to recover damages for slander constitutes a chose in action, and in this instance it arose after the desertion by the husband. But it is immaterial whether the damages here recovered should be treated as separate or community property, in view of the fact that it belongs to that class of the property to which the wife would have a perfect right to resort for support of herself and child.

[6] We are not disposed to subscribe to the doctrine that an abandoned wife must be in actual want before she can sue for community property alone. The law does not contemplate that there shall be a wrong without a remedy, or that those who have legal rights shall be denied access to the courts for their enforcement. It has often been held that the husband can use his statutory authority to control and manage the community property for the purpose of perpetrating a fraud upon the wife. Krenz v. Strohmeir, 177 S. W. 178; Stramler v. Coe, 15 Tex. 214; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585. This rule does not appear to rest upon or to be affected by the financial situation of the wife. The abandoned wife might, in this instance, be empowered to sue alone to prevent the loss of her community interests by collusion between her husband and his father. It is true no fraud or collusion was alleged. But we are not discussing the sufficiency of the petition, but the sufficiency of the facts to authorize the suit.

[7, 8] It is next contended that the statements relied on as defamatory were uttered under circumstances which made them privileged communications. In the case of Davis v. State, 74 Tex. Cr. R. 298, 167 S. W. 1108, L. R. A. 1915A, 572, this identical issue was before the Court of Criminal Appeals, and was determined adversely to the appellant. While it appears that the remarks there made upon that feature of the case were not called for in order to determine any of the assignments of error, what was said has much persuasive force, and we think presented the proper rule of law. The testimony in this case shows by the admissions of the appellant himself that the defamatory statements were voluntarily made, and were not given in response to any questions or for the purpose of furthering an investigation. The jury found that he made them maliciously, and knew that they were untrue at the time. To one familiar with the date of the appellee's marriage and the ordinary significance of the language used, the imputation of unchastity was too clear to be misunderstood. Upon a statement of all the facts as set out in the appellee's original petition, an innuendo was unnecessary to show the defamatory nature of the utterances. The language was slanderous per se, and it was not necessary to prove special damages. Hatcher v. Range, 98 Tex. 85, 81 S. W. 289.

The remaining assignments are overruled, and the judgment of the district court is affirmed.