## TRICOU v. HELVERING, Commissioner of Internal Revenue.*
### No. 7090.

Circuit Court of Appeals, Ninth Circuit.
Dec. 18, 1933.

Joseph D. Brady and George Bouchard, both of Los Angeles, Cal., for petitioner.

*Rehearing denied April 3, 1934.

Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and W. Frank Gibbs, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, MACK, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals refusing to allow the petitioner to deduct from her income in 1923 a part of her net loss incurred in 1922, amounting to $236,736.82.

Petitioner sustained a capital loss of $319,387 in 1922 with reference to her interest in Hidalgo Land Securities Syndicate. She claims that as this loss resulted from the operation of a trade or business regularly carried on by her she thereby sustained a "net loss" for the year 1922, within the meaning of section 204 of the Revenue Act of 1921 (42 Stat. 231), which she was entitled to carry forward as a deduction in computing her net income for the year 1923.

The Commissioner ruled that petitioner's loss did not result from the operation of any trade or business regularly carried on by the taxpayer and, consequently, refused to allow the petitioner's loss for 1922 to be deducted from her income for the next taxable year.

The Board of Tax Appeals sustained the Commissioner, holding that petitioner was not entitled to the deduction claimed for the reason that she was not engaged in any trade or business in the year 1922. This finding of the ultimate fact is binding upon us unless we can say that there is no substantial evidence to sustain it.

The record before us contains no evidence and no stipulation of facts. Consequently, we cannot determine whether the proof sustains the finding of the ultimate fact involved. The petitioner relies upon facts stated in the opinion and in the findings of fact of the Board of Tax Appeals to overturn its finding of ultimate fact. The function of this court in such a situation is clearly determined by decisions in reference to law cases where the appellate court has no power to find the facts. In Bishoff v. Commissioner, 27 F.(2d) 91, 92 (C. C. A. 3), the court, speaking through Judge Woolley, said: "This provision [44 Stat. 110, § 1003b, 26 USCA § 1226 (b)] is within the trend of recent legislation respecting fact finding tribunals with special judicial powers such as the Federal Trade Commission whose 'findings of fact, if supported by testimony,' are made conclusive

(Comp. Stat. §§ 8836a–8836k [15 USCA §§ 41–51]; Curtis Pub. Co. v. Federal Trade Commission (C. C. A.) 270 F. 881, 911), and is generally regarded, because of the power to modify or reverse such of the Board's decisions as are 'not in accordance with law,' as conferring upon the designated appellate courts jurisdiction to review not questions of fact such as complicated accounts and disputed values but only matters of law such as are raised by writ of error on review of a judgment entered on the verdict of a jury"— citing Avery v. Commissioner (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; Brown v. Commissioner (C. C. A.) 22 F.(2d) 797.

In Burr v. Des Moines Co., 68 U. S. (1 Wall.) 99, 102, 17 L. Ed. 561, it is said: "The statement of facts on which this court will inquire, if there is or is not error in the application of the law to them, is a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest. The statement must be sufficient in itself, without inferences or comparisons, or balancing of testimony, or weighing evidence, to justify the application of the legal principles which must determine the case. It must leave none of the functions of a jury to be discharged by this court, but must have all the sufficiency, fulness, and perspicuity of a special verdict. If it requires of the court to weigh conflicting testimony, or to balance admitted facts, and deduce from these the propositions of fact on which alone a legal conclusion can rest, then it is not such a statement as this court can act upon. The paper before us 'is evidence of facts, and not the facts themselves as agreed or found.' It is obvious that if the whole of this paper were presented by a jury as a special verdict, it would be objectionable, as presenting the evidence of facts, and not the facts themselves, which must determine the issue."

This rule has been applied to special findings of fact in the case of Miller v. Life Ins. Co., 79 U. S. (12 Wall.) 285, 301, 20 L. Ed. 398, where the Supreme Court said: "Conclusions of fact cannot be found by this court when sitting as a court of errors under the act of Congress authorizing the Circuit Courts to try and determine issues of fact in civil cases, as in the case before the court. What is required is that the findings of the Circuit Court shall contain the conclusions of fact, or, as the rule is stated in a recent decision of this court [citing Burr v. Des Moines Co., supra], a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which

those ultimate facts are supposed to rest, and it is well-settled law that the finding must be sufficient in itself without inferences or comparisons, or balancing of testimony or weighing evidence."

Judge Van Devanter, speaking for the Circuit Court of Appeals for the Eighth Circuit, in Anglo-American, etc., v. Lombard, 132 F. 721, 734, said: "If any ultimate fact material to the issues is to be inferred from the whole evidence, or from other facts proved or admitted, the inference must be drawn by the trial court, and the fact must be stated in the finding. Like the special verdict of a jury, a special finding can present only questions of law"—citing numerous Supreme Court decisions in support of that proposition.

The Supreme Court, speaking through Justice Brewer, in Lehnen v. Dickson, 148 U. S. 71, 13 S. Ct. 481, 483, 37 L. Ed. 373, said: " * * * No mere recital of the testimony, whether in the opinion of the court or in a bill of exceptions, can be deemed a special finding of facts. * * *"

The Supreme Court in that case declined to determine the ultimate facts involved, stating: "We have no authority to examine the testimony in any case, and from it make a finding of the ultimate facts."

In order to understand the effect of this conclusion it is necessary to quote further from the opinion, which we do, as follows:

"To obviate the objection that there is no finding of facts or agreed statement thereof, counsel for plaintiff in error insist that there is really no dispute as to the facts, no conflict in the testimony as to any substantial question, the only difference being as to a subordinate and unimportant matter, and that, therefore, it is the same as though the facts had been agreed upon or found. Further, they suggest that in the opinion delivered by the trial judge there is a narration of the facts we have heretofore recited, together with others, and then this statement preliminary to the discussion of the legal questions: 'Thayer, District Judge, after stating the facts as above,' and claim that such statement is equivalent to a finding of the facts as previously recited.

"But the burden of the statute is not thrown off simply because the witnesses do not contradict each other, and there is no conflict in the testimony. It may be an easy thing in one case for this court, when the testimony consists simply of deeds, mortgages, or other written instruments, to make a satisfactory finding of the facts; and in another it may be difficult, when the testimony is largely in parol, and the witnesses directly contradict each other. But the rule of the statute is of universal application. It is not relaxed in one case because of the ease in determining the facts, or rigorously enforced in another because of the difficulty in such determination. The duty of finding the facts is placed upon the trial court. We have no authority to examine the testimony in any case, and from it make a finding of the ultimate facts."

█ If the appellate court has no power or authority to determine the ultimate facts from the probative facts, it would seem to follow that, where the findings of the Board of Tax Appeals contain the necessary ultimate facts to support the judgment, the court will not determine whether the probative facts stated in the findings would lead to a different conclusion as to the ultimate fact. To do so would require the court to find the ultimate fact from the probative facts and thereupon substitute its conclusion for the conclusion of the Board of Tax Appeals and reverse the decision because it had reached a different conclusion as to the ultimate fact. This cannot be done. This would seem to follow from Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 22 S. Ct. 55, 57, 46 L. Ed. 113, where the parties entered into a stipulation as to the facts and the cause was submitted to the trial judge on the stipulation. The court made no special findings of fact, but made a general finding. After quoting from the statement of facts the court said:

"This statement has been referred to for the purpose of understanding the materiality of certain facts not found or agreed upon, the failure to do which prevents our use of the statement in the decision of the case. * * * When there are special findings they must be findings of what are termed ultimate facts, and not the evidence from which such facts might be but are not found. If, therefore, an agreed statement contains certain facts of that nature, and in addition thereto and as part of such statement there are other facts of an evidential character only, from which a material ultimate fact might be inferred, but which is not agreed upon or found, we cannot find it, and we cannot decide the case on the ultimate facts agreed upon without reference to such other facts. In such case we must be limited to the general finding by the court. We are so limited because the agreed statement is not a compliance with the statute.

"As to what is necessary in special findings or in an agreed statement of facts, the

authorities are decisive. It is held that upon a trial by the court, if special findings are made, they must be not a mere report of the evidence, but a finding of those ultimate facts on which the law must determine the rights of the parties; and if the finding of facts be general, only such rulings of the court in the progress of the trial can be reviewed as are presented by a bill of exceptions; and in such case the bill cannot be used to bring up the whole testimony for review, any more than in a trial by jury. Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608. * * *

"It has, however, been held that where there was an agreed statement of facts submitted to the trial court and upon which its judgment was founded, such agreed statement would be taken as an equivalent of a special finding of facts. Supervisors v. Kennicott, 103 U. S. 554, 26 L. Ed. 486. But as such equivalent, there must of course be a finding or an agreement upon all ultimate facts, and the statement must not merely present evidence from which such facts or any of them may be inferred."

It will be observed that in this latter case the trial court had made a general finding in favor of the appellee; that the parties had agreed upon certain ultimate facts and in addition thereto certain evidentiary facts; that the appellant claimed that the statement of facts including the ultimate facts and the evidentiary facts required a contrary conclusion to that reached by the trial judge. The Supreme Court declined to consider the evidentiary facts for the purpose of determining whether the ultimate facts derived therefrom, plus the ultimate facts stipulated, required a reversal of the judgment. In the case at bar we are asked to weigh the evidentiary facts and reverse the finding of the Board of Tax Appeals of the ultimate facts, which is exactly what the Supreme Court refused to do in the case just cited. Wilson v. Merchants' Loan & Trust Co., supra.

The finding of the Board of Tax Appeals on the only ultimate fact in issue is as follows:

"In this process of refinancing, petitioner's loss occurred in 1922. Can it be said that this loss is such a loss as petitioner is entitled to use in determining a 'net loss' within the meaning of Section 204 of the Revenue Act of 1921 and bring forward and use as a deduction in determining her net income for 1923? We do not think so. * * *

"It is clear petitioner was not engaged in any trade. Was she operating a business in 1922 within the meaning of the statute?

There is nothing to show that after the death of J. F. Strickland petitioner became the organizer and promoter of corporations as he was in his lifetime. * * *

"The fact would still remain that the loss which she incurred in Hidalgo Land Securities Syndicate was an investment loss and not connected with any securities which she bought and sold in her business as a dealer in securities (if indeed she ever established any such business)."

■■ Evidentiary facts cannot be used to overcome the finding of ultimate facts unless they compel an opposite conclusion as a matter of law. The statement of such evidentiary facts "in an opinion" or in "findings of fact" does not add to their dignity. Furthermore, it is fundamental that, where an appellate court is called upon to review the finding of a jury or trial court because its conclusion of fact is opposed to the evidence, all the evidence adduced before the trial court must be presented to the reviewing court, and, in the absence of a proper showing that all the evidence is thus presented, it will be assumed that other evidence not so presented was adduced before the trial court and justified and required the conclusion of the trial court. Here there is no statement in the findings of fact that the evidentiary facts therein stated were the only facts adduced before the board, and, if there were, it is doubtful if such a statement could be considered. The findings of probative facts cannot be substituted for a statement of the evidence. With these preliminary observations we quote other portions, not hereinbefore quoted, of the findings of fact of the Board and the opinion, so far as pertinent to the petition to review:

"From 1889 until his death on May 21, 1921, J. F. Strickland was the husband of the petitioner and they resided in Texas. Mr. Strickland was a promoter, capitalist and investor, and prior to his death accumulated a fortune of about a million dollars, one-half of which was the property of the petitioner under the Texas community property laws. His principal business activities were in connection with public utilities. He was one of the organizers of the Texas Power and Light Company and was its president at the time of his death. He was also president of the Dallas Railway Company, which operates the street railway system of the city of Dallas, Texas; was also president of the Dallas Power and Light Company and president of the Texas Electric Railway, which owns and operates extensive interurban railway lines in the state of Texas. He also organized the

Dallas Union Trust Company and the Dallas Securities Company and was the president of each at the time of his death. While president of the several companies above named, Mr. Strickland gave their affairs his personal attention and immediate supervision. His office was in the Interurban building in the city of Dallas, Texas. Mr. Strickland's methods were to organize various corporations and take stock in them and induce others to do so and realize his profits from the development and progress of such corporations. Most of the enterprises which he promoted and organized were successful.

"At the time of his death he was engaged in and had his money invested in many enterprises, a few of which were highly speculative. Part of his business consisted of trading in various speculative securities. One of the business enterprises which he promoted was the Hidalgo Land Securities Syndicate, a land development and irrigation enterprise. It consisted of between thirteen and fourteen thousand acres of land located in the Rio Grande River Valley of Texas and adjoining an irrigated section of the state. The plan was to develop the land by irrigation and subdivide it into small tracts and sell these small tracts to farmers who would settle on the land. He was one of the principal shareholders in this enterprise, investing about $375,000 therein and making subscriptions under which he was subject to call for further investment. He was a member of the Board of Managers of the syndicate and vice-chairman of that board. He also was active in inducing others to subscribe for shares in the syndicate. There were two other large shareholders, who with Mr. Strickland managed and carried on the business of the Syndicate. They were J. H. Sharry and D. E. Wagonner. There were thirty or forty other stockholders of the Syndicate owning much smaller interests than did Strickland, Wagonner and Sharry. The capital which Mr. Strickland invested in the Hidalgo Syndicate was community property, one-half belonging to petitioner.

"Petitioner was the sole beneficiary named in Strickland's will. But because they had no children she was also his sole heir under intestacy laws, and the will was never probated. So far as the record shows no proceedings were had in the Probate Court and upon her husband's death, petitioner took charge of the property owned by herself and husband as community property and dealt with it as her own. Upon Mr. Strickland's death, petitioner indicated her intention of carrying on her husband's various activities as nearly as she could. She selected as her aides her brother-in-law, Jack Beall, and her brother, Burr Martin, both of whom had been closely associated with her husband during his lifetime. She executed powers of attorney to these two men to act for and in her stead in the transaction of business matters. She caused her brother, Burr Martin, to be elected as one of the Board of Managers of the Hidalgo Land Securities Syndicate, to fill the vacancy occasioned by the death of her husband, to represent her interests. She consulted with her brother and with her brother-in-law, Jack Beall, who had been elected to office in Mr. Strickland's place in some of the other corporations in which he was largely interested, and with C. L. Cox, who had been Mr. Strickland's secretary, in respect to various business matters, including those connected with the Hidalgo Syndicate, almost daily through 1921 and 1922. Petitioner did not establish any office for the transaction of business but consulted her advisers at her place of residence. She signed an agreement to meet calls for further capital in the Hidalgo Syndicate and did meet several calls during 1921 and early part of 1922, for substantial amounts, not only on the subscriptions originally signed by Mr. Strickland, but on those signed by other subscribers and underwritten by Mr. Strickland. The amounts paid by her in 1921 and 1922 for her own account and the account of other subscribers, aggregated between $90,000 and $100,000.

"Because of the inability of other subscribers, including D. W. Wagonner, one of the large subscribers, to continue meeting calls for capital, it became apparent that the Hidalgo Syndicate would have to be refinanced in 1922, and petitioner, along with other stockholders, to avoid further losses, consented that the managers sell the concern out to J. H. Sharry. This transaction resulted in a loss to petitioner of $319,387 in 1922."

In Washburn v. Commissioner, 51 F.(2d) 949, 951, the Circuit Court of Appeals of the Eighth Circuit, opinion by Judge Kenyon, it was said, with reference to the finding of the Board of Tax Appeals that the taxpayer was not engaged in a regular trade or business, that the question is one of mixed law and facts. We quote from that opinion as follows: "The Board here found certain primary facts. It drew therefrom the ultimate conclusion that petitioner was not regularly engaged in trade or business under section 204 (a). This required a construction of section 204 (a) as applied to the facts. The question here is a mixed one of law and fact. Where similar question was raised in

Bishoff v. Commissioner of Internal Revenue (C. C. A.) 27 F.(2d) 91, 92, the court said: 'Even accepting as conclusive the Board's findings of primary facts, it sometimes happens that the reviewing court must inquire, as on writ of error, into the ultimate finding in order correctly to determine whether the decision is validly supported by evidence and therefore is "in accordance with law." ' "

The opinion is concluded as follows: "We are satisfied that petitioner was engaged in a business regularly carried on within the meaning of section 204 (a) of the Revenue Act of 1921, and entitled, under section 204 (b), to the deduction sought."

It seems to us that this was an exercise by the appellate court of the very power confided by the Congress in the Board of Tax Appeals, even if it be conceded that finding that a person was engaged in a trade or business is a mixed finding of law and fact. It seems to have been assumed by the courts dealing with this very question of whether or not the taxpayer was engaged in trade or business that the methods of procedure before the Board of Tax Appeals are not calculated to separate questions of law from questions of fact in the way they are separated in a court of law, and therefore to endeavor to dispose of the matter by conceding to the Board of Tax Appeals its power to find the facts and exercising the power on the part of the court to declare the law. In many cases it is clear from the record before the Board of Tax Appeals that they have misconstrued the law, and, where that is apparent, it has not been thought necessary to too nicely discriminate between the ultimate conclusion of fact and the evidentiary facts and statements of law contained in the findings and opinion. Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389; Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 77 L. Ed. 397; Anderson v. U. S. (C. C. A.) 48 F.(2d) 201; Wallace v. Commissioner (C. C. A.) 62 F.(2d) 826.

The evidentiary facts set up in the findings of fact of the Board may be summarized briefly as follows:

That for thirty-two years, from 1889 until his death May 21, 1921, appellant's husband had been engaged in the business of promoting public utility corporations; that his transactions were sufficiently numerous to constitute separate and independent business as a promoter; that, in addition to this business of promotion, he is engaged in speculating in corporate securities; that he promoted the Hidalgo Land Securities Syndicate; that after her husband's death the petitioner took charge of all the property owned by herself and husband as community property and dealt with it as her own; that with her brother-in-law and her brother, who acted under powers of attorney from her, she caused her brother to be elected one of the board of directors of the Hidalgo Land Securities Syndicate; she conferred with various people almost daily concerning various business matters, all from her residence; she did not establish a place of business; and that she invested additional money in the Hidalgo Land Securities Syndicate. It will be observed that there is no statement that she promoted a single corporation which had been her husband's business and no statement that she engaged in the business of trading in securities as her husband had done. In short, the facts stated by the Board in its opinion go no further than to show that she was engaged in attempting to protect business investments aggregating a million dollars.

We think that the ultimate finding of the Board is correct, whether it be regarded as a finding of fact or a mixed finding of law and fact, that the petitioner was not engaged in any trade or business during the taxable year 1922. We are confirmed in this view by the two decisions of the Supreme Court rendered after the decision of the Board of Tax Appeals, Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 77 L. Ed. 397; Burnet v. Commonwealth Imp. Co., 287 U. S. 415, 53 S. Ct. 198, 77 L. Ed. 399.

The petitioner also contends that, although it may be true that she was not engaged in a trade or business in 1922, as that term is used in section 204 (a) of the Revenue Laws of 1921 (42 Stat. 231), nevertheless, the loss which she suffered in 1922 was a loss resulting from a trade or business which she carried on previous to 1921. The theory upon which this contention is advanced is that, if her husband was engaged in carrying on a trade or business in the state of Texas, she had a community interest in the business equal to that of her husband, and, therefore, that she was engaged in a trade or business during that period; that therefore, even though the trade or business ceased at the time of the death of her husband, she was nevertheless entitled to deduct the loss subsequently accruing as the result of carrying on a trade or business during his lifetime. There seems to be little doubt that by the law of Texas relating to community property she was, during his lifetime, as much engaged in the community business as was her husband.

See discussion of community property law of Texas in Hopkins v. Bacon, 282 U. S. 122, 51 S. Ct. 62, 75 L. Ed. 249.

The regulation of the Treasury Department (article 1601, of Treasury Regulations 62, promulgated under Act of 1921) expressly limits the application of net losses from trade or business to losses occurring during the taxable year during which the trade or business was conducted. Under this regulation, petitioner would not be entitled to deduct a loss occurring in 1922, although such loss may have been the result of business conducted in previous years, but in Burnet, Commissioner, v. Marston, 61 App. D. C. 91, 57 F.(2d) 611, the Court of Appeals of the District of Columbia held that this regulation, in so far as it limited the net losses arising from business to the losses occurring during a year in which the business was conducted, was in conflict with the statute authorizing such deduction under the special facts of that case.

■ The question the petitioner seeks to present to us is raised for the first time on this appeal. Her appeal to the Board of Tax Appeals is predicated on the express allegation in her petition that during the year 1922 she was engaged in a trade or business and sustained a loss of about $319,387 in that year from the operation of said trade or business. This petition was filed May 4, 1927, more than five years before the decision of the Court of Appeals of the District of Columbia in Burnet, Commissioner, v. Marston, supra, on March 14, 1932. The opinion and finding of the Board of Tax Appeals was promulgated before that decision was rendered. The question sought to be raised here was not presented to or decided by the Board of Tax Appeals, and for that reason error cannot be predicated on their failure to consider that matter.

Order affirmed.

GARRECHT, Circuit Judge (dissenting).

As I dissent from the opinion and judgment of the court in this case I deem it not improper to state my reasons therefor.

The fact or the amount of petitioner's loss is not in dispute. She claims that this loss resulted from the operation of a trade or business regularly carried on by her, and that she thereby sustained a "net loss" for the year 1922, within the meaning of section 204 of the Revenue Act of 1921, which she was entitled to carry forward as a deduction in computing her net income for the year 1923.

It is stipulated that, if there was a "net loss" for 1922, within the meaning of the above section of the Revenue Act, the amount thereof is $236,736.82.

The facts are not in dispute. The Board arrived at the ultimate conclusion that petitioner was not engaged in trade or business as contemplated by the statute, and that the claimed loss sustained by the petitioner was not a "net loss" within the meaning of the act.

The question here is: Does the statute,[1] when properly applied to the admitted facts, sustain the conclusion arrived at by the Board?

The line of distinction between one who invests in corporations and another whose dealings in corporations may be said to be his trade or business is one which has not been clearly indicated by the decisions. When an activity ceases to be isolated and assumes a continuity and importance that indicates an activity regularly engaged in must necessarily depend upon the facts of each particular case.

Petitioner and her deceased former husband, J. F. Strickland, from 1889 until May, 1921, resided in Texas and together accumulated a fortune of about a million dollars, which, under the community property law of Texas, belonged to both in equal shares. Although under the community property statutes of Texas, the agency and powers of the spouses are different from those of a partnership, the husband by law being constituted the manager and having powers beyond the control of the wife; in other respects the marital community ownership is essentially a partnership.

"No effort is made to vest a greater portion of these joint acquisitions in one spouse than in the other. The wife's, in point of ownership, are in every respect the equal of those of her husband. They are identical; in short they own the estate in common."

---

[1] The Revenue Act of 1921 provides, as follows:

"Sec. 204. (a) That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); and when so resulting means the excess of the deductions allowed by section 214 or 234. * * *

"Sec. 214. (a) That in computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * *" 42 Stat. 231, 239.

Speer's Law of Marital Rights in Texas, p. 373, par. 296.

The courts of Texas frequently speak of the community as a marital partnership, and, in some instances, have applied to the community the rules of commercial partnership.

In the case of Hopkins v. Bacon, 282 U. S. 122, 51 S. Ct. 62, 63, 75 L. Ed. 249, where the Supreme Court was considering the Constitution and laws of Texas, in connection with the Revenue Act of 1926, that court said: "The statutes contain sweeping provisions as to what shall be included in community property. They provide that each spouse shall have testamentary power over his or her respective interest in the community property. In the event of failure to exercise such testamentary power they provide that the property shall go in the first instance to the descendants of the deceased spouse. They provide, as is usual in States having the community system, that the husband shall have power of management and control such that he may deal with community property very much as if it were his own. In spite of this, however, it is settled that in Texas the wife has a present vested interest in such property. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799. Her interest is said to be equal to the husband's. Wright v. Hays, 10 Tex. 130, 60 Am. Dec. 200. It is held that the spouses' rights of property in the effects of the community are perfectly equivalent to each other. Arnold v. Leonard, supra. These expressions as to the wife's interest are confirmed by the authorities holding that if the husband, as agent of the community, acts in fraud of the wife's rights, she is not without remedy in the courts. Stramler v. Coe, 15 Tex. 211; Martin v. Moran, 11 Tex. Civ. App. 509, 32 S. W. 904; Watson v. Harris, 61 Tex. Civ. App. 263; 130 S. W. 237; Davis v. Davis (Tex. Civ. App.) 186 S. W. 775."

Later, in the concluding paragraph of the same decision the court further said: "It remains only to say that the interest of a wife in community property in Texas is properly characterized as a present vested interest, equal and equivalent to that of her husband."

Since petitioner was the sole beneficiary named in Strickland's will, and because they had no children, she was also his sole heir under the intestacy laws of Texas, she thus became the sole owner of all the community enterprises theretofore conducted by her deceased husband. The opinion of the Board of Tax Appeals in this case specifically so found.

The Board in its opinion admitted that, had Strickland lived and continued the enterprises in which he was engaged, as to him any loss in this Hidalgo Land Syndicate venture would have come under the "net loss" provisions of section 204 of the Act of 1921. But the Board denied such relief to his surviving wife principally perhaps because of the Board's erroneous conclusion that up to the death of her husband, petitioner was "engaged in no business at all." This view completely ignores the community property laws obtaining in the state of Texas.

When J. F. Strickland invested the community funds, of which he owned one-half and petitioner the other half, in the Hidalgo Syndicate, he was acting as the statutory agent of the marital community. See Hopkins v. Bacon, supra. Moreover, these funds which Strickland, the agent, was engaging "in the business of promoting and financing corporations," were the property of the community in which petitioner had an equal interest, and it follows that during his lifetime she was engaged in business with respect to the Hidalgo Syndicate to the same extent as her husband.

Furthermore, the undisputed facts compel the conclusion that after her husband's death petitioner continued the business enterprises theretofore conducted by him for the community, and the findings of fact of the Board are to this effect: "So far as the record shows no proceedings were had in the Probate Court and upon her husband's death, petitioner took charge of the property owned by herself and husband as community property and dealt with it as her own. Upon Mr. Strickland's death, petitioner indicated her intention of carrying on her husband's various activities as nearly as she could. She selected as her aides her brother-in-law, Jack Beall, and her brother, Burr Martin, both of whom had been closely associated with her husband during his lifetime. She executed powers of attorney to these two men to act for and in her stead in the transaction of business matters. She caused her brother, Burr Martin, to be elected as one of the Board of Managers of the Hidalgo Land Securities Syndicate, to fill the vacancy occasioned by the death of her husband, to represent her interests. She consulted with her brother and with her brother-in-law, Jack Beall, who had been elected to office in Mr. Strickland's place in some of the other corporations in which he was largely interested, and with C. L. Cox, who had been Mr. Strickland's secretary, in respect to various business matters, including those connected with the Hidalgo Syndicate, almost daily through 1921 and 1922. Petitioner did not establish any office for the transaction of busi-

ness but consulted her advisers at her place of residence. She signed an agreement to meet calls for further capital in the Hidalgo Syndicate and did meet several calls during 1921 and early part of 1922, for substantial amounts, not only on the subscriptions originally signed by Mr. Strickland, but on those signed by other subscribers and underwritten by Mr. Strickland. The amounts paid by her in 1921 and 1922 for her own account and the account of other subscribers, aggregated between $90,000 and $100,000."

The same conclusion appears in the Board's opinion:

"The petitioner, after the death of her husband, took charge of the property which had been accumulated by herself and husband during his lifetime and which he had managed prior to his death, and undertook the management of same. Since her husband's death she has continued corporations in which she and her husband were investors at the time of his death and buying interests in other corporations. Petitioner has kept a regular set of books since her husband's death, in which these transactions have been recorded.

"The record shows that on several occasions prior to her husband's death, petitioner visited the Hidalgo Syndicate property and after her husband's death was in regular conference with her advisers in regard to its affairs. * * *"

That the activities of petitioner continued through the years and constituted a business or trade regularly carried on is further indicated in the Board's opinion by the following statement: "The evidence shows that after the death of J. F. Strickland and in the intervening years between the date of his death and the hearing of this proceeding, petitioner bought and sold a considerable number of stock and bonds of corporations and other securities—not much during the first two or three years after Mr. Strickland's death, but more later as time went on."

The Board would have permitted Strickland to make this reduction had he lived. It it difficult to see that the event of his death, under the facts as found, changed the petitioner's status so as to deprive her of the same advantage.

It is conceded that Washburn v. Commissioner (C. C. A. 8) 51 F.(2d) 949, and Averill v. Commissioner, 20 B. T. A. 1196, support petitioner's contention here, but it is argued by respondent that these cases in effect have been overruled in Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 206, 77 L. Ed. 389, and Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 208, 77 L. Ed. 397.

In the Dalton Case, the court held the loss claimed was sustained by the corporation and not by Dalton, and found that it was an investment loss which did not occur in the operation of the trade or business regularly carried on by Dalton, and, further, that "this taxpayer did not regard the business losses of the Dalton Manufacturing Company as his loss." In the Clark Case, the court held that "the losses resulting from the sale of the Bowers Company stock in 1921 and 1922 constituted losses arising from occasional or isolated transactions and not from the operation of a business regularly carried on." These two cases were considered by this court in Wallace v. Commissioner, 62 F.(2d) 826, and the distinction here made indicated.

The facts in these cases are readily distinguishable from those in the case at bar. Furthermore, no reference is made to the Washburn Case in either of the opinions, and we do not regard it as having been overruled.

It has been repeatedly held that section 204, being a relief provision, should be construed liberally in favor of the taxpayer. See Burnet v. Marston, 61 App. D. C. 91, 57 F. (2d) 611, 612, and cases cited.

In the case at bar, the Board's findings show that J. F. Strickland, for the community of which petitioner was a part, was carrying on a business comprising various enterprises and ventures of which the Hidalgo Syndicate was one; that upon his death, petitioner, even without the usual formality of a proceeding in probate, assumed the management and control of all the property and affairs of the community and regularly continued to carry on the business theretofore conducted by her deceased husband. Having in mind, and giving effect to the community property laws of Texas, and construing and applying the Revenue Act here involved, to the undisputed primary facts found by the Board of Tax Appeals, I conclude that the loss, which it is admitted was sustained by petitioner, resulted from a trade or business regularly carried on by her.

It follows therefore that the loss sustained by petitioner was a "net loss" within the meaning of the statute, entitling her to the deductions claimed, and the order of the Board of Tax Appeals should be set aside.