## Sallie Watson et al. v. M. C. Harris, alias M. C. Watson.

### Decided May 25, 1910.

**1.—Pleading—Judgment.**

In considering a pleading for the purpose of rendering judgment, it is not to be strictly construed, but it is to be aided by all reasonable inferences and intendments, the rule being at least as liberal in such cases as upon a general demurrer.

**2.—Same—Husband and Wife—Community Property—Inheritance.**

In an action by the abandoned widow and children of a decedent to recover land the title to which was held in the name of a putative wife with whom he had lived after such abandonment, but alleged to have been acquired with community funds of himself and plaintiff and by his labors during the existence of the marriage which was known to the defendant, and to be held in trust by her, the pleading was sufficient to support a recovery by plaintiff in the right inuring to her as lawful wife, though the petition did not specifically assert a community interest in her, but alleged plaintiffs to be the legal heirs of decedent.

**3.—Limitation—Trespass to Try Title.**

The statute of limitation of four years governing an equitable action to cancel deeds (Rev. Stats., art. 3358) has no application to a suit in trespass to try title to recover land held in trust.

**4.—Putative Wife—Community Property.**

A woman living as wife with one known to be lawfully married to another had no community interest in land acquired by him through their joint means or efforts, but only an equitable interest therein to the extent that her own means or labors contributed to acquire it, and where this contribution to its purchase or the extent of such contribution is not shown, the whole should be treated as the community property of the husband and his lawful wife. And on its sale and reinvestment in other lands, these, too, should be treated as such community property to the extent that they were acquired from such source or from the husband's earnings, though the title was taken, not in the name of the husband, but in that of the putative wife.

**5.—Same—Gift by Husband.**

A gift of property to a putative wife would be valid as against the rights of heirs of the husband, but he could not, by such gift, transfer to the putative wife the interest of the legal wife in community property.

**6.—Resulting Trust—Intention.**

A resulting trust is created where land is purchased with the means of one person and the title taken in the name of another, and this result does not depend on the intention of the parties.

**7.—Trespass to Try Title—Common Source.**

A common source of the title of defendant and plaintiff sufficiently appears where both claim under the same deed, one as grantee, the other as beneficiary of a resulting trust.

**8.—Putative Wife—Purchase of Personal Property.**

Where the putative husband and wife purchased personal property together under no written title, each would be presumed to own an undivided half interest in the absence of evidence as to the source of the consideration or of a gift by him to the putative wife.

Appeal from the District Court of Lampasas County. Tried below before Hon. John D. Robinson.

*W. B. Short, H. F. Lewis, A. McFarland, Allen & Hart,* and *James H. Hart,* for appellant.—Under the Texas statute controlling the descent of property of decedents, a surviving wife is an heir of her deceased husband who had died intestate. Arts. 1688-1701, Rev. Stats., 1895; Hanna v. Hanna, 30 S. W., 822; Western U. T. Co. v. Kerr, 23 S. W., 565; 21 Cyc., p. 418.

This being an action in trespass to try title, plaintiffs seeking recovery of title and possession of certain described real estate, the four years' statute of limitation had no application, and the court erred in concluding that plaintiffs were barred of recovery by said four years' statute of limitation. Rev. Stats., 1895, art. 3358; Bell County v. Felts, 120 S. W., 1065-1072; Stafford v. Stafford, 96 Texas, 106; McCampbell v. Durst, 15 Texas Civ. App., 525.

The court having found as a fact that the two tracts of land containing 170 acres each were purchased with money furnished and earned jointly by S. R. and M. C. Watson, and that the deeds to said tracts were taken in the name of M. C. Watson, such facts created in S. R. Watson's favor a resulting trust, which, upon his death, descended to his heirs, and these heirs would not be barred from having same declared until after four years after the death of S. R. Watson. Cooper, Admr., v. Lee, 75 Texas, 114; Wilson v. Simpson, 80 Texas, 287; Robertson v. Du Bose, 76 Texas, 10; Rucker v. Daly, 66 Texas, 284; Cole v. Noble, 63 Texas, 434.

The court having found as a fact that the said two tracts of land were purchased with money furnished by the joint efforts of S. R. Watson and M. C. Watson, the said S. R. Watson contributing presumably one-half thereof, and there being no evidence that it was agreed between the said S. R. Watson and M. C. Watson that the relation of debtor and creditor was to be created between them, the presumption of law is that they intended that the grantee in said conveyance, M. C. Watson, should hold for the benefit of S. R. Watson to the extent, at least, of his contribution to the purchase price of said land. Pomeroy's Equity Jurisprudence, secs. 502, 981, 1038; Kinlow v. Kinlow, 72 Texas, 639; Burns v. Ross, 71 Texas, 519; Smith v. Strahan, 16 Texas, 320; Hendrix v. Nunn, 46 Texas, 147;

Stramler v. Coe, 15 Texas, 215; Wright v. Hays, 10 Texas, 133; Martin v. Moran, 32 S. W., 904; Bell County v. Felts, 120 S. W. Rep., 1072.

It appears from the findings of fact of the court and also from the undisputed evidence of this case that plaintiffs and the defendant were claiming title to all the land and particularly said 160-tract, from a common source of title. Rev. Stats., art. 5266; Wade v. Boyd, 60 S. W., 360; Curtis v. Wilson, 2 Texas Civil Appeals, 646; Curdy v. Stafford, 88 Texas, 124; Powers v. Minor, 87 Texas, 83; Mitchell v. Mitchell, 80 Texas, 115; Hilburn v. Harris, 21 S. W., 572.

The court erred in refusing to render judgment herein for the plaintiffs because it appears from the undisputed evidence in this case that plaintiff Sallie Watson was the legal wife of S. R. Watson at the time of his death, and at all times while the property in controversy was being acquired by him, and that the other plaintiffs are the lawful children of S. R. and Sallie Watson. Rev. Stats., art. 1696; Hayworth v. Williams, 102 Texas, 308.

*W. H. Browning,* for appellee.—The community right of the surviving wife in property is a right acquired by *purchase,* and not by *inheritance* from the deceased husband; and therefore the allegation in plaintiff's petition "that S. R. Watson owned and possessed at the time of his death the real and personal property sued for, and that the plaintiffs are entitled to the possession of the said property *as the legal heirs of S. R. Watson, deceased,*" would limit the claim of plaintiffs to a claim as heirs of the separate estate of S. R. Watson. Western U. Tel. Co. v. Kerr, 23 S. W., 565; Heidenheimer v. Loring, 26 S. W., 101; Snyder v. Nunn, 66 Texas, 258; Railway Co. v. Whitaker, 68 Texas, 633.

The primary purpose of this suit being to cancel the deeds to defendant and engraft a trust on said conveyances, this action must be considered a personal action, and is subject to the plea of four years statute of limitation interposed by defendant. Rev. Stats., art. 3358; Railway Co. v. Titterington, 84 Texas, 225; Lawson v. Lawson, 69 S. W., 249.

No supplemental petition having been filed setting forth any excuse for not bringing suit earlier, limitation will commence to run from date of deeds to defendant. Ortiz v. Benavides, 61 Texas, 60; Childres v. Green, 57 Texas, 56; Lewis v. Terrill, 26 S. W., 754.

If S. R. Watson paid any part of the consideration for the land the title to which was taken in the name of M. C. Watson no resulting trust could be created thereby, if such trust was contrary to the intention of the parties. Goodrich v. Hicks, 48 S. W., 799.

A resulting trust must exist, if at all, at instant deed was made and cannot be created by any subsequent agreements or payments. Oury v. Sanders, 77 Texas, 279-280; Arnold v. Ellis, 48 S. W., 886.

As to the land sued for, the legal title to which was in defendant, no trust could be engrafted therein in favor of S. R. Watson or his heirs by reason of his contributing to the purchase thereof, without proof being made of the amount contributed. Hayworth v. Williams,

102 Texas, 308; Lawson v. Lawson, 69 S. W., 274-284; Harris v. Hobbs, 54 S. W., 1085-1086.

As to the one-half of the 160-acre tract for which no deed was shown to have been made to defendant, and to which no common source or claim of title was shown, and to which plaintiffs failed to show a chain of title from the sovereignty of the soil, the court did not err in rendering judgment therefor in favor of defendant. Rev. Stats., art. 5266; Starr v. Kennedy, 27 S. W., 26; Halley v. Fontaine, 33 S. W., 262; Greenwood v. Fontaine, 34 S. W., 8267.

It being shown that S. R. Watson knowingly lived in an illicit relation with defendant, the implied or express contract between S. R. Watson and defendant to divide or share the profits of their joint labor cannot be enforced through the courts by him or any one claiming through him, but the courts will leave the parties as they find them   Lawson v. Lawson, 69 S. W., 247.

KEY, CHIEF JUSTICE.—Appellant's brief contains a substantially correct statement of the nature and result of this suit, as follows:

"Mrs. Sallie Watson, wife of S. R. Watson, deceased, and M. A. Watson, Jim S. Watson, Dora Watson McMillan, joined by her husband John T. McMillan, Clemmie Watson Stephens, joined by her husband Charlie Stephens, and Abe Watson, children of Sallie Watson, plaintiff, and of S. R. Watson, deceased, filed this suit in the District Court of Lampasas County, Texas, on March 15, 1909, against M. C. Harris, alias M. C. Watson, in the form of trespass to try title.   Plaintiffs alleged that S. R. Watson died in the State of Georgia on April 6, 1908, intestate; that at the time of his death plaintiff Sallie Watson was his lawful wife, she having been married to S. R. Watson since about the year 1868, and never having been divorced from him; that the other plaintiffs, viz.:   M. A. Watson, Jim S. Watson, Dora Watson McMillan, Clemmie Watson Stephens and Abe Watson were the children of said Sallie Watson and S. R. Watson, deceased, born in lawful wedlock.

"Plaintiffs alleged that at the date of his death, S. R. Watson was the owner of three certain tracts of land situated in Lampasas County, Texas, and also of certain personal property described in said petition; that on the 6th day of April, 1908, the date of the death of S. R. Watson, plaintiffs were the owners and entitled to the possession of all of said real and personal property, and that on said date the defendant entered on said premises and ejected plaintiffs therefrom, and since said date has unlawfully withheld from plaintiffs the possession thereof, to their damage in the sum of $8000.

"Amplifying the foregoing allegations, plaintiffs alleged that prior to the year 1882, the defendant M. C. Harris, alias M. C. Watson, lived in the State of Georgia in the same community with the deceased S. R. Watson, and with these plaintiffs; that the said M. C. Harris, while in Georgia, knew the deceased and the plaintiff Sallie Watson were legally married; that in the year 1882 deceased S. R. Watson left the State of Georgia, and came to the State of Texas, settling in Falls County; that defendant M. C. Harris left the State of Georgia at about the same time, came to Falls County and there-

after lived with S. R. Watson in Falls and Lampasas Counties, claiming to be his wife, and going under the name of M. C. Watson; that during all of this time she actually knew that S. R. Watson was legally married to plaintiff Sallie Watson; that plaintiff Sallie Watson was still living, and that Sallie Watson and S. R. Watson had never been divorced; that the defendant M. C. Harris, alias M. C. Watson, continued to live with S. R. Watson, claiming to be his wife until the date of his death on April 6, 1908.

"It was further alleged that when S. R. Watson left Georgia he had about $500 in money, and that the defendant had nothing; that after defendant and S. R. Watson had lived together in Texas from about 1882 until 1893, S. R. Watson bought a farm in Falls County for which he paid $500 cash, and executed his three notes for $2000, the deed being taken in the name of S. R. Watson, and the consideration paid by him, and the release, upon the payment of the notes, being made to him; that thereafter, on November 30, 1896, S. R. Watson and defendant, signing under the name of M. C. Watson, sold the Falls County farm for $3750, the purchase price being evidenced by vendor's lien notes, which were afterwards paid; that upon the sale of this Falls County property, S. R. Watson and defendant immediately moved to Lampasas County, and continued to live together as husband and wife; that on December 1, 1897, they purchased for the sum of $2000, $800 of which was paid in cash, the tract of 170 acres of land first described in the petition, the balance of the purchase money being secured by the vendor's lien notes of the Watsons, payable in 1898, 1899, 1900 and 1901, and the deed being taken in the name of M. C. Watson.

"That in 1904, S. R. Watson purchased the second tract of 170 acres described in the petition, paying therefor $700 in cash, and assuming payment of vendor's lien notes on the land, which notes he subsequently paid off; that the deed to this tract was also taken in the name of M. C. Watson.

"That on September 10, 1907, S. R. Watson purchased the third tract, containing 160 acres of land described in the petition, paying therefor $840 in cash, and executing his notes for the balance, the deed to this tract being taken in the name of S. R. Watson.

Plaintiffs further alleged that while the deeds to the first two tracts of land were taken in the name of M. C. Watson, defendant, that the purchase money for each was the proceeds of the sale of the Falls County farm, and the earnings of S. R. Watson; that at the time the deed to the first tract was made, S. R. Watson, deceased, was about sixty years of age, was a very illiterate man, was mentally weak and was wholly under the influence and control of defendant, who was a determined and strong-minded woman; that defendant persuaded and induced S. R. Watson to have the deeds to the two tracts of land made to her, with the intention and design of improperly obtaining from S. R. Watson, a portion of his property, and of defrauding his legal wife, plaintiff Sallie Watson, and his legal heirs out of said property.

"Plaintiff alleged that the facts set forth created a resulting trust inuring to their benefit; that defendant held all of the property

aforesaid in trust for them, as surviving wife and heirs of S. R. Watson.

"The petition also contained appropriate allegations showing that defendant had disposed of certain of the personal property, with a prayer for judgment against her for its value; also, with allegation of value of rents and revenue, and prayer for damages. Plaintiff prayed judgment for the restitution and possession of the lands described, and of the personal property, for costs, etc.

"By her first amended answer, filed April 14, 1909, defendant plead general demurrer, general denial, plea of not guilty and specially plead three, five and ten years statutes of limitation; prayed that the cloud cast upon her titles because of plaintiffs' claims be removed, and also plead the four years statute of limitations, referring to cause of action other than those for the recovery of realty.

"On a trial before the court without a jury, judgment was rendered for defendant for all of the land and personal property sued for, and quieting her in her title thereto. To the judgment of the court the plaintiffs excepted, and in open court gave notice of appeal to this court. Thereafter, on May 18, 1909, plaintiffs filed an appeal bond herein.

"At the request of the plaintiffs the court filed herein his findings of fact and conclusions of law, as follows:

"*Findings of fact.*—1. I find that the plaintiffs reside in the State of Georgia, and that the plaintiff Sallie Watson is the legal surviving wife of S. R. Watson, deceased, who died April 6, 1908; that Sallie Watson and S. R. Watson were lawfully married in Marion County, Georgia, in the year 1868, and the other parties plaintiff are the lawful children of S. R. Watson and Sallie Watson.

"2. I find that S. R. Watson left his wife and family in the State of Georgia about the year 1882 or 1883, leaving them the home and property, and removed to Falls County, Texas, bringing some means, but I can't say how much, and lived with the defendant, M. C. Harris, as his wife, until shortly before his death in 1908.

"3. I find that S. R. Watson was never divorced from Sallie Watson and was legally married to her, at the time of his death.

"4. I find that M. C. Harris, the defendant, lived in the State of Georgia, and in the same community in which S. R. Watson and his family lived, and left the State of Georgia at about the same time that S. R. Watson left; and that she knew Sallie Watson, the wife of S. R. Watson, and knew that Sallie Watson was alive and had never been divorced from S. R. Watson. That defendant was never married, but had three children when she left Georgia; also some means, but how much I cannot say.

"5. I find that in 1892, S. R. Watson and the defendant purchased 110 acres of land in Falls County, Texas, for which they paid $2556, $500 of which was cash, $300 of which was claimed by the defendant as her separate property, and $200 as that of her son. The remaining $2056 was evidenced by the joint notes of S. R. Watson and the defendant, and were paid by them by money earned by their joint labor, and joint efforts on the farm.

"6. I find that on November 30, 1896, S. R. Watson and the defendant sold the 110 acre farm in Falls County for the sum of $3750. The defendant claimed the proceeds of this sale as her property, the said S. R. Watson stating that it was hers, and she deposited this money with one J. L. Litteral, and afterwards loaned the money to J. L. Litteral and took his note therefor in his name.

"7. I find that on December 1, 1897, the defendant purchased a tract of 170 acres of land in Lampasas County, Texas, taking the title in the name of M. C. Watson, and paid therefor $800 cash, and four notes of $300 each, which were given and paid.

"8. I find that on the 13th day of October, 1904, the defendant purchased a second tract of 170 acres of land in Lampasas County, taking the title in the name of M. C. Watson, paying $700 cash and assuming the payment of $400, which was paid. These two 170-acre tracts of land were paid for out of the funds secured from the sale of the Falls County tract, and from their further joint labors in Lampasas County, but in what proportion, I can't say.

"9. I find that on September 10, 1907, S. R. Watson and the defendant purchased a third tract of land in Lampasas County, taking the title in the name of S. R. Watson and M. C. Watson, paying therefor $1500, $840 of which was cash, and assuming the payment of two notes of $300 each, which were not fully paid at the date of the death of S. R. Watson. At the date of the last purchase, S. R. Watson stated that all the property was the defendant's.

"10. I find that S. R. Watson and the defendant lived together as man and wife during the years of their residence in Falls and Lampasas Counties, and both worked in the acquisition of the property in their possession at the death of S. R. Watson.

"11. I find that S. R. Watson left Texas in the spring of 1908 to go to Georgia on a visit, and while there, died on the 6th day of April, and that after his death an attempt was made by certain of his relatives to probate in the courts of Georgia, a nuncupative will, alleged to have been made by S. R. Watson, but its probate was denied, and what property he attempted to convey by this nuncupative will, I cannot say.

"12. I find that at the death of S. R. Watson on April 6, 1908, that the personal property in the possession of S. R. Watson and the defendant, amounted in value to about $800, and that a reasonable value of all the lands was $5000.

"13. I cannot say what property or means S. R. Watson or the defendant had or owned as their property at the time they came to Texas, nor can I say in what proportion their joint efforts have contributed to the accumulation of the property in their possession at the date of the death of S. R. Watson.

"*Conclusions of law.*—1. Plaintiffs having specifically plead their title claiming as heirs of S. R. Watson, deceased, they must be restricted to this title.

"2. Plaintiff Sallie Watson, not claiming title by virtue of any community rights, but claiming as heir of S. R. Watson, is, therefore, precluded from recovering herein as to her community rights in prop-

erty that might have been owned by S. R. Watson at his death, and could only recover herein a right to one-third for life of his realty and one-third absolutely of all personal property in fact owned by S. R. Watson at his death.

"3. The court further concludes, that if the plaintiff Sallie Watson could, under her petition, recover as to a community interest or right, that the same would, as to the two tracts of 170 acres each, conveyed to M. C. Watson, be barred from recovery by the four years' statute of limitation interposed by defendant.

"4. The court concludes that no resulting trust is shown in favor of plaintiffs to the two tracts of 170 acres each, it not being shown that such was intended by the parties at the time the title to said two tracts of land was made to M. C. Watson.

"5. The court further concludes that plaintiffs have failed to establish their right to recover any part of the interest of S. R. Watson in the 160-acre tract of land conveyed to S. R. Watson and M. C. Watson, by their failure to establish their title by evidence from either the sovereignty of the soil, or from common source.

"6. The court further concludes that plaintiffs cannot recover as to any personal or separate property of S. R. Watson, it not being shown that he actually owned any at the date of his death."

Appellants' first and second assignments of error complain of the trial court's first and second conclusions of law, the contention being, that the plaintiffs' petition was sufficient to entitle the plaintiff Sallie Watson to recover upon the theory that the property, or a portion of it, was the community estate of herself and her deceased husband. We sustain that contention and hold that the court below erred in the rulings referred to. It is true, as pointed out in appellee's brief, that the petition did not, in specific terms, allege that the defendant held the property sued for in trust for the plaintiffs as surviving wife, and heirs of S. R. Watson, nor did it allege that Sallie Watson sued in her right as survivor of the community, and it alleged that S. R. Watson was the owner of the property sued for, at the time of his death, and that the plaintiffs were entitled to it as his legal heirs. It did allege that the plaintiff, Sallie Watson, was the lawful wife of S. R. Watson long prior to, and at the time he acquired the property, and did allege that the defendant was holding it in trust, and the necessary implication would be that the plaintiffs were the beneficiaries in the trust referred to. Even as against a general demurrer, the rule is, that a pleading is not to be strictly construed, and it is to be aided by all reasonable inferences and intendments. That being the rule in considering a general demurrer to the petition, most assuredly the same, if not a more liberal rule, should be applied when that pleading is considered for the purpose of rendering judgment. Hence, we hold that the petition in this case entitled the plaintiff, Sallie Watson, to whatever rights enured to her by reason of the fact that she was the wife of S. R. Watson, as disclosed by the testimony and the findings of fact.

The third assignment assails the trial court's third conclusion of law, to the effect that, as to the two 170 acre tracts of land, Mrs. Sallie Watson's right to recover her community interest was barred by

the four years statute of limitation. In its essential features, the suit was an action in trespass to try title, and not an equitable action to cancel deeds; and therefore, the four years statute of limitation had no application, and the court erred in ruling otherwise. (Stafford v. Stafford, 96 Texas, 106; Bell County v. Felts, 120 S. W., 1065 and 1072).

The fourth assignment is addressed to the trial court's fourth conclusion of law, holding that no resulting trust was shown in favor of the plaintiffs to the two 170 acre tracts of land. The court found, as a fact, that S. R. Watson and the defendant purchased a tract of land in Falls County in 1892, for a consideration of $2556; that $2056 thereof was paid in money earned by their joint labors and efforts on the farm; that they, subsequently, sold the Falls County land, and in 1897 bought a tract of 170 acres in Lampasas County, and in 1904, bought another tract of 170 acres in the same county, being the two tracts involved in this suit; and that these two tracts of land were paid for out of the funds derived from the sale of the Falls County tract, and from their joint labors in Lampasas County. It is true that the deeds to the two tracts referred to, were taken in the name of the defendant. In Hayworth v. Williams, 102 Texas, 308, 116 S. W., 45, our Supreme Court, in considering the rights of a married woman occupying the same relation to a man that the defendant in this case occupied towards S. R. Watson, used this language:

"The records show that in 1880 the land in suit was conveyed by deed, regularly executed to Thomas Jefferson, for a recited cash consideration, acknowledged to have been paid by him at the time. Margreth Williams' right in this property is a question of fact to be submitted to the jury under proper instructions. If Margreth Williams can show that the money with which the land was purchased, was acquired in whole, or in part, by her labor in connection with Thomas Jefferson, before the time when the land was purchased, then she would be entitled to a share in the land in the proportion that her labor contributed in producing the purchase money. Nothing which she did contributing to the improvement of the property or otherwise in connection with Thomas Jefferson after the deed was made, and the land paid for, can affect the title. Her right must have existed in the fund which purchased the land, and no trust in favor of Margreth Williams will arise out of the dealings between her and Jefferson, after the title had vested in him. Allen v. Allen, 101 Texas, 362, 107 S. W., 528; Kinlow v. Kinlow, 72 Texas, 639.

"It is not necessary that Margreth Williams should prove that she produced by her labor a part of the very money that was used in purchasing the land. If she and Thomas Jefferson were working together to a common purpose, and the proceeds of labor performed by them became the joint property of the two, then she would occupy the position that a man would have occupied in relation to Thomas Jefferson under the same circumstances; each would own the property acquired in proportion to the value of his labor contributed to the acquisition of it. In the statement of the evidence in this case by the court, as it is submitted to us, there is no mention made of the financial condition of Thomas Jefferson or of Margreth Williams, at the

time that they united their fortunes unlawfully, nor his financial condition at the time he came to Texas. The source from which the money was derived for the purchase of the land, is not made to appear. The legal title was vested in Thomas. Jefferson by the deed, and, in order to participate in that, Margreth Williams must show a state of facts which made Thomas Jefferson a trustee for her benefit, and must prove such facts as will enable the jury to say, whether or not, she contributed anything to the purchase of the land, and if so, the proportion of her contribution."

As shown by the case cited, S. R. Watson acquired an interest in the two 170 acre tracts to the extent of the consideration furnished by him. The findings show that they were paid for out of the funds obtained from the sale of the Falls County tract, and the joint labors of S. R. Watson and the defendant; but in what proportion of joint labors, the judge said he could not determine. The seventh and eighth findings of fact show that a cash payment of $800 was made when the first 170 acre tract was purchased, and that a like payment of $700 was made when the other 170 acre tract was purchased. Now, it is clear that these two payments, amounting to $1500, were made out of the proceeds of the sale of the Falls County land. The Falls County tract was deeded to S. R. Watson, and if the proof failed to show, as the trial court held, what proportion of the consideration paid for that land was furnished by the defendant, the court should have treated the whole of the $1500 comprising the two cash payments for the 170 acre tracts, as the property of S. R. Watson; and, to that extent at least, the defendant held those two tracts in trust for the plaintiffs, unless the defendant acquired title to the $1500 referred to by donation or gift from S. R. Watson. On the latter subject, the court, for some reason, made no specific finding, but merely stated that the defendant claimed the proceeds of the sale of the Falls County land, took possession thereof, and loaned it out, and took the note in the name of S. R. Watson, and that he stated that it was hers. Instead of reciting the testimony bearing on the question, the trial court should have made a finding as to whether or not S. R. Watson made a gift of the money refered to, to the defendant. If such gift was made, the plaintiffs, who assert title through and under S. R. Watson, must fail. This, however, would not be the case as to the plaintiff Sallie Watson claiming title by virtue of her community right. While it is true that the husband, when not acting in fraud of the rights of the wife, can sell, or otherwise dispose of community property without her construe, he can not, in fraud of her rights, give or donate her interest therein to a stranger. (Pom. Eq. Jur. sec. 503; Martin v. Moran, 11 Texas Civ. App., 509, 32 S. W., 904). It is so repugnant to our sense of justice that this court will never sanction the proposition that a husband may desert his lawful wife, and, while living in adultery with another woman, donate to the latter as a gift, his wife's interest in the property owned by them in common, unless the Legislature enacts a law which will admit of no other construction. Of course, the rule is different as to children and all others who claim title by inheritance, because an heir cannot question the right of his ancestor to do as he pleases with his property. But that rule of law has no

application to a husband or wife asserting title under the statute regulating the status of community property.

Before leaving the fourth assignment of error it is deemed proper to note, that the trial court seemed to entertain the view that there could be no resulting trust, unless it was shown affirmatively that the parties to the transaction intended that such trust should exist. That was a mistaken view, the rule being, that when the consideration is furnished by one person and the title taken in the name of another, a trust results in favor of the party furnishing the consideration, unless facts and circumstances be shown which will rebut the presumption that a trust was intended. In fact, in many instances, a trust will exist although such was not the intention of either the grantor or the grantee. For instance, if A places funds in the hands of B, to be used for a particular purpose, and B, for the purpose of defrauding A, invests such funds in real estate, taking the title in his own name without the consent of A, he will hold the title in trust for A. The principle referred to is well stated by the author heretofore cited: "Equity first introduced the principle that in all transactions of men concerning land—their transfers and bargains—the consideration is the essential fact which determines the real beneficial ownership, wherever the legal title may be vested. The consideration draws to it the equitable right of property; the person from whom the consideration actually comes, under whatever form or appearance, is the true and beneficial owner. *This grand principle extends not only to dealings which are intentional and rightful, but to those which are fraudulent, or in any manner wrongful or unconscientious.*" (Pom. Eq. Jur. sec. 981.) See also Smith v. Strahan, 16 Texas, 320; Hendrix v. Nunn, 46 Texas, 147; Burns v. Ross, 71 Texas, 519.

By the fifth assignment appellant complains of the fifth conclusion of law, wherein the court held that the plaintiffs were not entitled to recover any part of the 160 acre tract of land conveyed to S. R. Watson and M. C. Watson, because they had failed to deraign title from the government, or to show common source of title, appellant's contention being that common source of title was shown. As to that tract of land, the proof shows that both the plaintiffs and the defendant claimed title under the same deed, which was sufficient proof of common source of title.

The sixth assignment relates to the trial court's holding in regard to the personal property. Much of what has already been said has application to that branch of the case, with this difference: If there was no written title to the personal property, the legal title rested in both S. R. Watson and the defendant; and, in the absence of proof to the contrary, it might well be assumed that each furnished half of the consideration, and owned an undivided one-half interest, unless it should be made to appear that S. R. Watson had undertaken to donate or give his interest therein to the defendant, in which event the rules of law hereinbefore announced concerning gifts, would have application.

The trial court's findings of fact are not sufficient to enable this court to dispose of the case on its merits. Therefore, on account of

the errors referred to, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*