## JOHNSTON v. WINN et al.
### No. 5052.

Court of Civil Appeals of Texas.
Texarkana.
April 8, 1937.

Rehearing Denied April 15, 1937.

L. J. Wardlaw, of Fort Worth, H. A. Leaverton, of Longview, and E. M. Dodson, of Marlin, for appellant.

Edwin Lacy, Jack E. Price, and Bramlette & Levy, all of Longview, and Geo. Prendergast, of Marshall, for appellees.

WILLIAMS, Justice.

Appellant, Johnston, J. O. Hughes, and H. H. Adams entered into a written contract under date of September 11, 1930, under which agreement Adams and Johnston were to furnish the necessary geological map and charts covering the area of Rusk, Gregg, Smith, and Harrison counties, Tex., in which area these parties proposed to purchase, option, broker, and sell oil leases and royalties. Titles to same were to be acquired in the name of J. O. Hughes. The agreement recited that Adams and Johnston were to receive 50 per cent. of the net profits from the sale of each lease and J. O. Hughes and W. R. Hughes were likewise to receive 50 per cent., and that each lease would carry its own expenses. W. R. Hughes was not consulted at the time this instrument was executed, but his name was included by the other three. W. R. Hughes refused to go into the agreement and never acted under it, and he will not be referred to hereafter in this opinion. Prior to the filing of this suit, appellant acquired the interest of Adams in all rights that Adams had under the agreement. For sake of brevity, the foregoing agreement will be hereafter referred to as the Johnston partnership, and another agreement hereinafter discussed will be called the Winn partnership. After the Johnston partnership agreement had been executed by Johnston, Adams, and J. O. Hughes in Fort Worth, Hughes in possession of a geological map furnished him by Adams and Johnston went to Longview, Tex. A few days after his arrival there he met Winn and Bailey. Hughes, Winn, and Bailey then entered into an agreement under which these three were to buy and sell royalty and leases in that area, each to contribute one-third of the cost and expenses of each mineral interest acquired, and each to share one-third in the net profits. The three complied with these details of the Winn agreement when they bought and sold various mineral interests. The legal title to each of the purchases under the Winn partnership was to be taken in the name of Winn and was so taken.

The two leases of about 28 acres each located in Gregg County, the lands involved in this suit, were acquired by the Winn partnership on September 16 or 17, 1930, and title was taken in the name of W. H. Winn, one of the appellees. J. O. Hughes, Adams, and Johnston on January 28, 1931, executed a written instrument by the terms of which they mutually dissolved their original contract dated September 11, 1930. On April 18, 1931, Bailey and Winn purchased from Hughes the one-third interest in the two tracts and executed a promissory note to Hughes for the purchase price in the sum of $5,000. On June 25, 1931, Bailey and Winn conveyed to Bristow and Kavanaugh one-half undivided interest in the two tracts. Later these lands proved to be oil-producing properties, and still later, on February 17, 1934, this suit was filed.

Appellant, Johnston, prosecutes this suit against appellees Bailey and Winn seeking to recover a one-sixth mineral interest in the two tracts of land, for partition of said interest, and for recovery of one-sixth of the oil produced and sold from said leases. Appellant seeks to recover this one-sixth interest, or one-half of the Hughes one-third interest in the two tracts, the legal title of which stands in the name of Winn, upon the proposition that a constructive trust was created in behalf of appellant and Adams. Or that where parties have entered into a written agreement whereby one of their number was to acquire mineral leases in a certain locality for the benefit of the Johnston partnership, and by the use of geological information belonging to the Johnston partnership such party acquired an interest in leases in said locality, the interest so acquired to the extent of one-third would be the property of the Johnston partnership and equity would vest an interest in said leases in the parties in accordance with the terms of said agreement, and Winn, holder of the legal title, would hold same in trust for the equitable owners. Among other defenses the appellees contend that the sole redress open to appellant for this alleged breach of contract would rest at most against his former associate Hughes only in the remedy of an action for damages suffered from the injury alleged.

The basis upon which appellant sought recovery is taken from appellant's original petition, to wit:

"That immediately after the agreement, as above alleged, was made, the said Adams furnished the said J. O. Hughes

with a geological map the said Adams had prepared, covering lands in Gregg and Rusk Counties, Texas, and instructed the said J. O. Hughes to acquire lands in certain areas in said counties; that soon after making the agreement, as aforesaid, the said J. O. Hughes, with the information furnished him by the said H. H. Adams, went to Gregg County, and there met the defendants, William H. Winn and C. H. Bailey, and entered into an agreement with the said William H. Winn and C. H. Bailey, by which agreement .the said Winn and Bailey and J. O. Hughes were to use the information furnished by Adams and acquire mineral leases upon certain lands indicated on the map furnished by the said H. H. Adams; that the said defendants, Winn and Bailey, and the said J. O. Hughes, agreed that the legal title to all leases to be acquired covering ·lands in Gregg and Rusk Counties, Texas, would be taken in the name of the defendant, William H. Winn, but that the said William H. Winn, C. H. Bailey, and J. O. Hughes were each to own an undivided one-third interest in said leases; that in pursuance of said agreement, using the geological information furnished by the said H. H. Adams, mineral leases upon the lands hereinafter described in Gregg County, Texas, together with other leases, were acquired, and were taken in the name of William H. Winn, for the use and benefit of himself (William H. Winn), C. H. Bailey and J. O. Hughes; that as a consequence thereof, under the agreement had between this plaintiff, J. O. Hughes and H. H. Adams, this plaintiff and H. H. Adams were entitled to an undivided one-half of an undivided one-third interest in the leases upon the lands acquired by the said William H. Winn, among which leases was the lease upon the lands hereinafter described in Gregg County, Texas."

In answer to special issues submitted, the jury found (1) that Winn and Bailey knew that plaintiff, Johnston, was claiming an interest in the one-third Hughes interest before they purchased same from Hughes, and also before ·they paid off to Hughes the $5,000 note given for purchase of same; (2) that Adams, Johnston, and Hughes made the contract dated September 11, 1930. The jury answered "Yes" to the following inquiry: "Do you find from a preponderance of the evidence that Adams and Johnston complied with their contract with J. O. Hughes, which contract was dated Sept. 11, 1930, and has been introduced before you?"

These were all and the only issues submitted to the jury. The trial court's action in entering the judgment non obstante veredicto for the appellees' involves the conclusion that as a matter of pure law the facts were insufficient to create a constructive trust, and that thereby the findings of the jury became immaterial.

It is undisputed that at the time the Winn partnership was formed, and at the time the Winn partnership bought these two tracts, neither Bailey nor Winn knew Johnston or Adams. No fraud on the part of Bailey or Winn was alleged or proven. Appellant does not contend that Bailey and Winn knew anything about the first agreement at the time the Winn partnership purchased these two leases from the fee owners. Therefore Adams and Johnston did not become partners in the Winn agreement. For Adams or Johnston to have become partners in this agreement, it was necessary for Winn and Bailey to have agreed ·to same. Quoting from Parsons on Partnership (2d Ed.) p. 166:

"No one among the rights of partners is more certain, or leads to more important consequences, than that implied by the phrase delectus personarum. Either partnership must be in its beginning voluntary, and the result of the choice and wish of those who become partners. Precisely so as the admission of new partners, it must continue to be.

"Hence, whatever rights a partner may have of assigning or otherwise disposing of his share of the profits, his character or relation of partner can not be assigned."

This phrase "delectus personae," which literally signifies the choice of the person, is applied to show that partners have the right to select their copartners; and that no set of partners can take another person into the partnership without the consent of each of the partners. 20 R.C.L. p. 802, § 4. So stubborn is this rule, that even the executors and other personal representatives of a partner do not, in that capacity, succeed to the state and condition of that partner. Another potent reason why Johnston or Adams or the Johnston partnership did not become a member of the Winn partnership and share in the profits of the Winn partnership is that they could not reap the profits without

also becoming liable for the losses, if any, in the Winn partnership. And they could not have been liable for any losses because Johnston or Adams did not agree to go into the Winn partnership.

■ To create a constructive trust, we do not look so closely to the intent of the parties which existed at the time the legal title was acquired. But we do look to that very essential element which requires the beneficiary claiming a resulting trust to have advanced the consideration or contributed a part of same prior to or concurrently with the transfer of the legal title. 42 Tex.Jur. p. 642, and authorities there cited; 65 Cor.Jur. p. 393, § 160, and cases there cited.

We quote from Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237, 241, to wit: "Equity first introduced the principle that in all transactions of men concerning land—their transfer and bargains —the consideration is the essential fact which determines the real beneficial ownership, wherever the legal title may be vested. The consideration draws to it the equitable right of property; the person from whom the consideration actually comes, under whatever form or appearance, is the true and beneficial owner." Pom.Eq.Jur. § 981.

■ A resulting trust must arise from the state of facts existing at the time the legal title to the property is acquired and cannot arise from matters coming into existence afterwards. 65 Cor.Jur. pp. 394, 395.

■ From the herein quoted paragraph of the pleadings, appellant pleaded "that in pursuance of said agreement, using the geological information furnished by the said Adams, mineral leases upon these lands were acquired," etc. It was necessary to allege and prove that this geological information was used by the Winn partnership in acquiring these leases. If so used, it would be a valuable consideration passing prior to or concurrently with the transfer of the legal title. Schultz v. Scott (Tex.Civ.App.) 210 S.W. 830, 831.

Winn and Bailey's testimony violently refuted the pleadings and contention of appellant that the geological map furnished to Hughes was used by them as a guide in the purchase of these leases.

Appellant does not contend that he or Adams paid any of the money in the purchase of these leases. Winn, Bailey, and Hughes each paid one-third of the cost of each purchase. Appellee Winn testified:

"When we were acquiring leases and royalty we did not have any map prepared by a geologist. The only map we had, we found an ownership map of the county, after we came up here. I and Bailey arrived here from San Antonio on September 14th and the next morning we met a man by name of D. McCann who lived in Longview, who told us about a block of acreage near Camp Switch being assembled for the Cranfil & Reynolds oil operators of Houston. So we decided to buy some of these leases around their block. Mr. Hughes or Johnston or Adams did not furnish any information with reference to the geology of that section, and we had no geology at all of any kind from any one, and we bought purely and simply on the strength of the blocks being assembled. We had contracted to trade with McCann on those two leases before we even met up with Hughes."

Appellee Bailey testified that Hughes never showed them a geological map; that they never saw one; that "we never had a geological map when we bought the property. We had a county map or ownership map. That was the only information we had except that Cranfil and Reynolds were getting a block together around Camp Switch, and we bought those leases due to the fact we were getting in their block. We bought these leases through a Mr. McCann, and had contracted to buy them before he and Winn met up with Hughes"; that they paid McCann $52.50 commissions. A canceled check for $52.50 was introduced in evidence payable to McCann executed by Winn, dated September 18, 1930. A memorandum appears on this check, viz.: "Payment in full to date Lawson, W. A. Moore and Boston Moore leases."

Hughes testified that Adams delivered to him in Fort Worth a geological map which he brought to Gregg county, and that he, Winn, and Bailey used it, and consulted the map in buying leases. This is the only evidence and all the evidence in this record that the map was used.

On February 19, 1931, this same Hughes made an affidavit which was filed for record in the county clerk's office of Gregg county on same date. In this affidavit

Hughes states "that H. H. Adams or his associates never furnished or offered to furnish any geological information or charts covering any area of Gregg or other counties which he was to geologize and furnish; that Adams and Johnston never performed or fulfilled any part of their agreement but breached and disregarded same, and said agreement was disregarded and held for naught by both Adams, Johnston, and himself soon after the contract had been signed up." It appears that this affidavit was made by Hughes in connection with a 75-acre lease in which his brother was interested. Before appellant filed this suit, Hughes had filed suit against Bailey and Winn to recover back this one-third interest he had sold them. We cannot determine when Hughes filed his suit, but on February 19, 1934, judgment was rendered for Bailey and Winn. Hughes testified that he brought that suit because he thought Bailey and Winn had mistreated him.

We have carefully searched the record, and the evidence quoted is all that was given in regard to whether the geological information was used. There is no evidence as to what the map disclosed nor whether the map, if it were used, gave any party any geological information as to lands around Camp Switch.

 Appellant pleaded the use of valuable geological data furnished by him as a basis for a recovery, but he failed to request this issue and obtain an affirmative finding necessary to establish a constructive trust. Such an issue was not submitted to the jury. In trial to jury on special issues, failure to request submission of issue constituting complete ground of recovery is waiver of such ground of recovery under R.S.1925, art. 2190, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann.Civ.St. art. 2190), in view of articles 2185 and 2186. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. And having failed to establish this essential element of a constructive trust, what notice given to Winn and Bailey prior to their purchase from Hughes became immaterial, and the trial court was authorized to enter judgment for appellees non obstante veredicto.

It is true the jury found that Adams and Johnston complied with their part of the Johnston partnership agreement with Hughes, but this is not a finding by the jury that either one of the Winn partnership used any geological data furnished by Adams in selection of these leases.

This case is distinguishable from Kimberly v. Arms, 129 U.S. 512, 9 S.Ct. 355, 360, 32 L.Ed. 764, cited by appellant. Kimberly expended $12,500, the same amount expended by Arms, all of which Arms used as expenses and salary for himself in prospecting and locating a mine in Arizona. From the results of this prospecting and this information, Arms made a trade for stock in the mine. The information was procured at the expense of the partners. "Under these circumstances, the purchase must be deemed to have been made in the interest of the partnership." That a consideration was passed by Kimberly prior to transfer of legal title was a fact determined by the court.

In Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237, 241, a constructive trust was created upon the legal title standing in the name of Harris, in behalf of the surviving wife of Watson. A part of the earnings and funds which went into the acquisition of that property at the very time of its purchase were the community funds of Watson and wife.

 It is undoubtedly the rule, as appellant contends, that one member of a partnership must act in good faith towards his copartners, and that the relationship of partners with each other is one of trust and confidence. The associates of Hughes in the Johnston partnership had a right to expect this good faith and fidelity from Hughes in his dealings with them, but when he failed to so act, it was a breach of that contract, and appellant's cause of action was against Hughes, a party to the first agreement, and not against these appellees who are strangers to that agreement.

In the case of Murrell v. Murrell, 33 La.Ann. 1233, the Murrells entered into a contract of partnership of merchandising and farming and provided that each partner should devote his entire time exclusively to the interests of the firm. The contract also provided that neither partner should engage in any other business without the written consent of the other partner. One of these partners breached this agreement and entered into a partnership with a third person and engaged in a cotton factorage and commission business. The court stated that an action for damages for the breach of

contract could be maintained against the other partner, but that he could not compel an accounting of its partnership share of the profits of the commission business. In that case the court based its opinion upon the ground that the farming partnership would not participate in the losses of the commission business and could not therefore be a partner in the profits thereof.

The foregoing from Murrell v. Murrell was quoted with approval in Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 210, 37 L.Ed. 1169. In this case Latta was a member of a partnership firm with Kilbourn and others engaged in the sale of real estate on a commission basis. Latta during this agreement entered into a partnership agreement with one Dr. Stearns under which they purchased and sold real estate, making substantial profits from such dealings. Kilbourn and his partners sued Latta for a part of these profits. In denying a recovery, among other statements, the court said: "A partner who, in violation of the act of partnership, enters into another firm, does not thereby give the right to his original copartner to claim a share in the profits of the new firm."

From Karrick v. Hannaman, 168 U.S. 328, 18 S.Ct. 135, 138, 42 L.Ed. 484, we quote: "Even when, by the partnership articles they have covenanted with each other that the partnership shall continue for a certain period, the partnership may be dissolved at any time, at the will of any partner, so far as to put an end to the partnership relation and to the authority of each partner to act for all, but rendering the partner who breaks his covenant liable to an action at law for damages, as in other cases of breaches of contract."

Under the facts of this record, appellant's cause of action is against Hughes for breach of contract. The fact that he failed to use the geological map and acquire leases in his name for the benefit of the Johnston firm, but instead entered into another partnership, does not meet that essential element that this geological information so furnished actually entered into the selection of the leases here involved. It was necessary for appellant to establish this fact in order to create a resulting or constructive trust.

The judgment is affirmed.