**STARK v. BALL et al.**

No. 14704.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 21, 1945.

Rehearing Denied Nov. 9, 1945.

Homa S. Hill, of Fort Worth, and Forrest D. Wright, of Cisco, for appellant.

Simon & Simon and R. A. Stuart, all of Fort Worth, for appellees.

SPEER, Justice.

Tom B. Stark, a real estate broker of Cisco, Texas, sued R. F. Ball, Sr., and R. F. Ball Construction Co., Inc., to recover a commission for the alleged sale of a ranch in Mills County consisting of approximately 4500 acres.

It is conceded that R. F. Ball was president and owner of practically all of the stock of the corporation and that his acts were binding on the corporation and for convenience in this discussion we will mention plaintiff and defendant Ball by name, omitting to include the corporation, intending that what is said with reference to Ball is likewise applicable to the corporation.

On February 9, 1944, Stark wrote Ball for a listing of the ranch with him for sale, and asked Ball's best price and if he wished to sell for all cash or if he would carry some notes and what rate of interest he would expect, advising Ball to include in the price the usual 5% commission. Stark also requested that he would like to have an exclusive listing for ninety days and advised that he had several good clients wanting ranches and hoped to make a sale for Ball within the ninety day period. Ball replied to Stark's letter by writing a pencil notation on its margin, reading: "I want $20.00 per acre. Will pay 5% commission. Will take one-half cash. Will carry bal. at 4% interest. Will not give exclusive listing to anyone. I have no plat of ranch, but I am having some made. Yours very truly, R. F. B."

Stark promptly took the matter of sale up with S. S. Laird of Kilgore, Texas, whom he knew to be interested in purchasing a ranch.

At about the same time Ball listed his property with Stark he likewise listed it with several other agents among whom was one Malcolm Jernigan. The record does not disclose whether listing with others was different from that with Stark.

Pursuant to negotiations between Stark and his client Laird, the ranch was inspected by Laird on April 15, 1944, and Stark advised Ball by telegram on that date that Laird was inspecting the ranch. Stark met Laird at Goldthwaite after the ranch had been inspected and when Laird asked him if he could deliver the ranch at $20 per acre Stark answered him in the affirmative and got out his file and handed Laird Ball's letter in which the land was listed. Laird said: "I will take the ranch at $20.00 per acre." That he would put the money in escrow in any bank named by Ball. Stark then called Ball on the telephone and told him that Laird had inspected the ranch and that he had sold it to him that day. That Laird was ready, able, and willing to put the money in escrow in any bank Ball would name. And added: "I would like to have a conference with you." Stark testified that Ball then said: "I can't deliver the ranch because I was offered $21.50 day before yesterday for it." Stark asked for an explanation of Ball's attitude and he simply replied: "Well I can't deliver."

On April 17, 1944, Stark wired Ball: "Sold your Mills County Ranch to S. S. Laird for $20.00 as per your letter to me. Immediate possession on approval of title. Will put money in escrow until title is approved for all the land you own in fee ac-

cording to an abstract you are to furnish to date. Wire confirmation." On April 19 following, Ball wired Stark: "As I have heretofore advised you over the phone I have withdrawn this property from your hands." He said the telephone conversation referred to by him was the one with Stark on April 15.

On April 10, 1944, some days prior to the inspection of the ranch by Laird, Malcolm Jernigan brought a prospective purchaser to Fort Worth to confer with Ball relative to purchasing the ranch. Ball was in the hospital and could not confer with him. Ball was released from the hospital on April 15 and went home, and the conversation between him and Stark relative to Laird's inspection and agreement to purchase the ranch was had some thirty minutes after Ball had gotten home from the hospital. Ball said that he told Stark in that conversation that he had decided not to sell the ranch and that his brother who lived on the ranch had told him a few days previously that there was someone down there who would pay him $21.50 for it, and that he told Stark that he wanted to take it off the market. He said that Stark told him in the conversation that Laird had looked at the ranch and seemed very much interested, and that they would like to make "an appointment or engagement with me to work out details, and I told him I had decided to take it off the market." Ball also testified that he never at any time promised any agent that he would give immediate possession of the ranch if sold, that it would have been impossible to have done so. That he had several thousand head of livestock on the ranch and that it would require at least ninety days to dispose of the stock and give possession.

On April 20, 1944, Hon. F. D. Wright of Cisco, attorney for Stark, wrote Ball stating that Stark had requested him to write with reference to the sale of the Mills County ranch. The letter emphasized the fact that Mr. Stark had worked diligently in an effort to sell the property, and that he had, in fact, sold it to S. S. Laird on April 15. The letter stated in effect that Laird was, on April 15 and was at the date of writing the letter, ready, willing, and able to purchase the land at the agreed price. The attorney expressed the opinion that under the facts in the case, Mr. Ball should go ahead with the sale, and if he did not desire to do so that he should pay Mr. Stark the commission of 5%. He suggested that Ball see his attorneys and after a conference advise the writer whether or not he would go ahead with the sale to Mr. Laird.

Ball immediately consulted his attorneys in regard to the matter and after a conference decided to go through with the deal with Laird. Ball had his attorney to communicate with Mr. Wright, attorney for Stark, and advise him that he (Ball) was ready and willing to go ahead with the deal with Laird.

One of Ball's attorneys being acquainted with Laird undertook on about "the 19th or 21st of April" to communicate by telephone with Laird but was unable to reach him until the 1st or 2nd of May, at which time Laird was told that Ball was willing to close the trade with him under the previous negotiations. Laird advised the attorney that he had made other arrangements or purchased other property and was not interested in the purchase of Ball's ranch.

Stark testified that the first information he had that Ball had proposed to go through with the trade with Laird was from his attorney on May 3.

Thereafter on May 8th Ball sold the ranch to Jernigan's client at $20 per acre, giving possession ninety days thereafter. The record does not disclose whether the sale by Ball was all cash or part cash and part credit, and no reference is made to abstracts of title.

The case was tried to the court without a jury and a judgment was entered that Stark take nothing. Hence this appeal by him. At the request of plaintiff Stark, the court filed findings of fact and conclusions of law. The court found the facts to be:

1. That the material allegations of plaintiff's petition, "except as hereinafter stated," were proven on the trial of this cause.

2. "The listing of defendant's land in this cause was evidenced by pencil notation on the margin of a letter written by plaintiff to R. F. Ball, Sr., on February 9, 1944, wherein the sale of the property in question was authorized for one-half cash and the balance in notes with 4% interest, and the property was sold for cash and not in compliance with such written agreement."

Conclusions of Law:

"I conclude, as a matter of law, that plaintiff is not entitled to recover in this

cause because of the variance in the listing and the sale of the property and that plaintiff should take nothing and that defendants should recover their costs in this behalf expended."

Mr. Stark, plaintiff below, and appellant here, predicates his right to reversal upon two points. They are: (1) "The court erred as a matter of law in holding that the variance in the terms of sale in the listing and the terms of sale was material." (2) "The court erred in holding in effect that the defendant (Ball) declined to carry out the sale as agreed upon, because the purchaser offered to pay cash for the property when it had been listed one-half cash and the balance in notes with 4% interest."

These points are discussed in the briefs together, and we shall likewise so consider them. As above shown, the listing of the property by appellee Ball with appellant Stark was for $20 per acre for the ranch; one-half cash and appellee to carry balance at 4%; agreement was made to pay 5% commission and a declination to give an exclusive listing.

The proposed sale by appellant to Laird was reflected in appellant's telegram of date April 17, 1944, in which he advised appellee Ball that he had sold the ranch to Laird, and that the purchaser was to get immediate possession on approval of title as reflected by an abstract to be furnished by Ball and that the purchase price would be put in escrow until title was approved and asked Ball to wire confirmation.

It is the settled rule of law in this state that under the conditions involved here that before a broker can recover commissions for his services he must find a purchaser ready, willing, and able to buy upon terms prescribed by the owner to the broker. 7 T.J. 444, Sec. 54, and cases cited in footnote. The same rule is announced in the later case of Franke v. Jones, Tex.Civ.App., 170 S.W.2d 795, writ refused. The rule laid down in 7 T.J., supra, is reiterated by the Supreme Court in Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472, 475. In the last cited case, there are two other conditions set out which, if met, would entitle the broker to commission, but neither of them are involved here.

It is obvious that when appellant found a purchaser ready, willing, and able to buy the land and pay all cash requiring immediate possession and the furnishing of abstracts of title contrary to the provisions of the listing of the land by appellee with appellant, he had not produced "a purchaser ready, willing, and able to buy * * * on terms specified in the contract of employment." The court found as a fact that appellee listed his property with appellant to be sold for one-half cash and the balance in notes with 4% interest, and that appellant potentially sold the property for cash and not in compliance with the written listing. And upon this theory he concluded as a matter of law that appellant had not earned the commission and therefore rendered judgment against him.

It is not contended by appellant that he did sell the property precisely as instructed. But as can be observed from his point of error, he complains because the court held as a matter of law that the variance in the terms of sale in the listing and the sale as made by appellant was material. In other words, that the sale made for all cash and one authorized to be made one-half cash and one-half in notes at 4% were substantially the same. If, as a matter of fact and law, there is a material difference between a sale made one-half cash and one-half on credit at 4% and a sale made for all cash, then the court's conclusions and judgment must be sustained; otherwise the judgment will be reversed.

Appellant in his pleadings below set out the listing with him of the property by appellee and with reference thereto, he alleged: "He (meaning Ball) further advised that he would sell the land either for cash or would take one-half cash and vendor's lien notes at 4% interest." If the listing had been as alleged by appellant, as quoted above, then his proof of sale for cash would have entitled him to the commission, but the transaction was all in writing, and it speaks for itself and thereby refutes the allegation that appellee would sell either for all cash or one-half cash and one-half on credit. When the petition was drawn counsel may or may not have been apprised of the full written listing of the property, but it is certain that appellant knew of the conditions therein for he advised appellee in the telegram above mentioned that the purchase price would be placed in the bank designated by appellee, and in effect, that the purchaser would want immediate possession and expect an abstract of title. He must have known

then that the sale was not in compliance with the provisions of the listing for he concluded his telegram by asking for a confirmation of that sale, and on the 15th by telephone, asked for a conference with Ball.

In Taylor v. Read, 51 Tex.Civ.App. 600, 113 S.W. 191, 192, a situation somewhat similar to the instant one was involved. An owner authorized a broker to sell his property one-half cash and balance on time; the broker consummated a potential sale for all cash, and the owner refused to go through with the deal. In this connection the court said: "It is the right of the owner of the land to prescribe the terms upon which it may be sold; and, when he directs the agent to sell on credit, or partly on credit, the latter has no power or right to depart from this instruction, and if he does so, the owner can decline to consummate the sale." The court reasoned that it may have been to the advantage of the owner to have a part of the purchase money invested in interest bearing paper rather than in cash, the investment of which would be another problem, and that the agent was powerless to substitute his judgment for that of the owner. See Gough v. Coffin, 55 Tex.Civ.App. 550, 120 S.W. 210; De Sollar v. Hanscome, 158 U.S. 216, 15 S.Ct. 816, 39 L.Ed. 956; Colvin v. Blanchard, 101 Tex. 231, 106 S.W. 323.

Referable to whether or not the difference in the sale proposed by appellant and the instructions given him in the listing by appellee is material as contended by appellant, it was held in Colvin v. Blanchard, 101 Tex. 231, 106 S.W. 323, that where a broker was instructed to sell land for one-half cash and the remainder on "long time notes" a sale for one-half cash and the remainder evidenced by notes of from one to five years payable "on or before" the maturity date shown, was not in compliance with the instructions given. It was said in effect that the clause "on or before" gave the purchaser a right to pay immediately and would defeat the seller's intention of having his money invested in "long time notes." In Green v. Priddy, 112 Tex. 567, 250 S.W. 656, an agent was instructed to sell an oil lease upon given terms and to allow the purchaser three days in which to examine abstract of title; the agent complied with certain portions of his instructions, but contracted with the purchaser to allow him five days in which to examine title, and it was held that the difference in the time authorized to be allowed and that allowed by the broker was fatal to a recovery thereon. It would seem that under some circumstances a difference of two days in the time in which title should be examined is insignificant, but in that case an oil well was being drilled on adjacent land and its value was to be determined within a few days, and to the owner, it may have been very important.

In the case before us, it is contended by appellant Stark that when he advised appellee Ball by the telegram of April 17 that he had sold the ranch at the agreed price, "immediate possession," to be paid in cash when title approved, with abstract to be furnished by Ball, that appellee Ball gave as an excuse for rejecting the proposed sale that he had another offer for a greater amount, and that he was taking the land off the market. Subsequent testimony of Ball indicates to us that while nothing came of the opportunity to sell at a greater price he was in fact revoking appellant's agency to sell from that time on. We say this because Ball did shortly thereafter sell the ranch through another agent. In this connection appellant cites and relies on language used by the Court of Civil Appeals in McNeny v. Radford, 70 S.W.2d 824, wherein the court said in effect that if the broker consummates a sale and submits it to the owner and the latter has good grounds for refusal to carry out the deal, he must state those grounds at the time of his refusal. That court cited 9 C.J. p. 627, § 103. See, also, 12 C.J.S., Brokers, § 95. It will be observed from the reading of the authority cited that as a prerequisite to the principle announced, the broker must have submitted a sale either satisfactory to the principal or in conformity with the terms on which the broker was authorized to sell the property. The McNeny case, supra, was subsequently reversed by the Supreme Court (129 Tex. 568, 104 S.W.2d 472) on other grounds without reference to what was said by the Court of Civil Appeals, in regard to principal's reason for rejecting the sale. If under such conditions the language of the Court of Civil Appeals could be considered as authority its effect is destroyed insofar as appellant in this case is concerned for the reason that the court declined to enforce that condition upon the ground that waiver by the principal was not pleaded. Appellant in this case did not plead waiver, estoppel, or any similar condition which would pre-

clude the appellee from urging the defense upon which the judgment in the instant case is founded. In every such case involving the point before the Court of Civil Appeals in the McNeny case, in which recovery of commission was allowed, the broker submitted to his principal a sale upon the terms and conditions authorized by the principal. Not so in the instant case. The rule seems to be that when a purported sale has been made by a broker and submitted to his principal in terms not embraced within his authority, the principal is not required to give any excuse for not accepting same, but may ignore it altogether in which event he will not be held to have ratified the proposed sale made by the broker. Colvin v. Blanchard, 101 Tex. 231, 106 S.W. 323.

■ There is a further contention in this case by appellant that the conditions of the sale made by him for "immediate possession" and furnishing an abstract of title by appellee would be implied under the broker's authority to sell. It will be observed that the listing was silent as to when possession would be given, nor was anything said in the broker's authority about appellee furnishing abstracts of title. Under such conditions we think the case of Willson v. Crawford, 61 Tex.Civ.App. 263, 130 S.W. 227, is authority for the presumption that appellee would give immediate possession if a sale was made, but we are unwilling to concede that the broker had authority under his listing to bind the principal to furnish an abstract of title. Under the facts revealed · in Sorsby v. Thom, Tex.Civ.App., 168 S.W.2d 873, error refused want of merit, it was held that where the broker contracted for his principal to give possession at a given time when his contract of employment was silent on the subject, the principal had the right to refuse the sale; but in that case custom as well as other matters obvious to all parties were involved, and we think the general rule announced in the case of Willson v. Crawford is the better one. In Peeples v. Griffith, Tex.Civ.App., 214 S.W. 561, the broker sued his principal for a commission upon ground that he had procured a purchaser ready, willing, and able to buy under the terms of his authority from the owner. The broker's authority to sell was silent on the subject of the principal furnishing an abstract of title. The broker attempted to bind his principal to furnish an abstract of title to the land sold. The principal declined the sale and the court held that the sale was not in conformity to the broker's authority and denied recovery for commission. In 7 T.J. 471, Sec. 75, it is said: "The broker is not entitled to recover commission where the contract of sale departs from the terms authorized by the principal, either by the insertion of provisions that are in conflict with the principal's terms or by the insertion of terms about which the broker's instructions are silent." We find it unnecessary, and we do not determine the merits of this case upon the conditions of possession and abstract of title in the proposed sale, but mention them only in connection with the cash and credit provisions of the listing to show that appellant did not submit to his principal, the appellee, a sale under the terms of the listing.

■ A great deal is said by both parties in their briefs about what took place subsequent to April 17 when appellant by telegram submitted to appellee his proposed sale. It is obvious to us that at that time appellee rejected what we may term a counter-proposition and subsequent events are not material in determining appellant's right to a commission. We have pointed out that appellant's proposed sale was not such as was authorized by the listing; but it is sufficient to say that although appellee did, through his attorneys some fifteen or seventeen days later, propose to appellant's client to let him have the ranch on his terms, the purchaser definitely declined to take it, stating that he had at that time made other arrangements or had purchased other property. It is evident to us that appellee and Laird, the proposed purchaser, never at any time agreed upon the same thing with reference to the sale.

In view of all the facts about which there is little difference between the parties and from the authorities cited, we have concluded and so hold, as did the trial court, that the proposed sale by the broker was not in conformity to his authority from his principal and that the difference between a sale that would have been authorized by the broker under the authority of his principal and the sale actually consummated was material to the principal and that the broker is not entitled to a commission. The judgment of the trial court should be and is therefore affirmed.